## TORRIE A. GILLIARD *v.* VAN-COURT PROPERTY MANAGEMENT SERVICES, LTD.
## (AC 20187)

Lavery, C. J., and Mihalakos and Flynn, Js.

Argued February 14—officially released June 5, 2001

*Charles D. Rockwell*, for the appellant (defendant).

*Patricia M. Strong*, for the appellee (plaintiff).

*Opinion*

MIHALAKOS, J. Following a jury trial, the defendant, Van-Court Property Management Services, Ltd., appeals

from the judgment rendered in favor of the plaintiff, Torrie A. Gilliard, on claims of breach of a covenant of good faith and fair dealing in discharging the plaintiff and failing to produce the plaintiff's personnel files in violation of General Statutes § 31-128g.[1] The defendant claims that the trial court improperly (1) denied its motion to open the direct examination of a witness, (2) denied its motion for a remittitur of economic damages for back wages when the plaintiff had an unreasonable expectation of continued employment with the defendant and voluntarily removed herself from the workforce for a period of time to have a child and (3) accepted the jury's verdict when the evidence did not support it. We disagree with the defendant and affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant is a real property management company that was formed in 1989. Edward Duval is its president and sole shareholder. Diane Dodge is its vice president. In 1994, the time of the actions at issue in this case, the defendant employed thirty-two people and managed 2200 units. One of the defendant's largest clients is the United States Department of Housing and Urban Development (HUD). On May 2, 1994, the defendant was appointed the exclusive independent fee agent for HUD properties in Connecticut and assumed management of the Town House Apartments (Town House) on Barbour Street in Hartford. The plaintiff, Torrie Gilliard, was a senior rental clerk at Town House and continued in that position under the defendant's management.

---

[1] General Statutes § 31-128g provides: "Each employer shall, within a reasonable time after receipt of a written request from an employee, provide such employee with a copy of all or part of his personnel file or provide such employee's physician with a copy of such employee's medical records, provided such request reasonably identifies the materials to be copied. Such employer may charge a fee for copying such file or records or any part of such file or records. Such fee shall be reasonably related to the cost of supplying the requested documents."

In June, 1994, the defendant fired the manager at Town House, elevated the plaintiff to the position of acting manager and gave her a $3 per hour increase in pay. In October, 1994, Lori Carvalho was transferred to Town House to serve as manager. The plaintiff continued to perform her duties as acting manager. On November 10, 1994, Dodge issued both a written and a verbal warning to the plaintiff. On November 14, 1994, the plaintiff worked for one hour before being fired by Carvalho. The plaintiff received no pink slip and no reason for her termination. A pink slip was later mailed to her, and the reason given for her termination was "insubordination." At the time of her termination, the plaintiff was being paid $12 per hour and working forty hours a week. After her termination from Town House, the plaintiff collected unemployment benefits for six months. In 1996, HUD sold Town House to new owners, and the defendant ceased serving as property manager. In 1997, the plaintiff worked as a volunteer in a recreational center. In November, 1998, the plaintiff obtained full-time employment again.

The plaintiff claimed damages of $480 a week from the date of her termination to the date of the trial, for a total of $120,640, less unemployment benefits and other wages that she had earned in the interim. The plaintiff's total damages claimed were $118,000. At trial, the cross-examination and redirect of Dodge were completed in one day, after which the defendant's counsel rested. The plaintiff's counsel then began rebuttal by calling the plaintiff to testify. On direct examination, the plaintiff testified to the time frame from November 10 to 14, 1994. The defense did not question the plaintiff concerning that time frame on cross-examination. At the end of cross-examination, the court excused the jurors for the day and told them that the next day only one further witness would be called.

The next morning, defense counsel asked the court for permission (1) to put on surrebuttal evidence, including the admission of a calendar for the month of November, 1994, and (2) to open his case because of "newly discovered information." The trial court ruled that the defense would be allowed surrebuttal following the plaintiff's rebuttal, but restricted to the scope of rebuttal. The court refused, however, to allow the defendant either to put the calendar into evidence or to open its case and recall Dodge to the stand. The court ruled that the defendant had had ample opportunity for redirect of Dodge on the previous day.

The jury found for the plaintiff and awarded her $118,000 in economic damages and $2500 in noneconomic damages.

I

The defendant first claims that the court improperly refused to allow it to open its case and to introduce into evidence a calendar of November, 1994, to correct the testimony of its own witness. We disagree.

The following additional facts are necessary to our determination of this claim. At trial, the plaintiff and the defendant differed as to the days of the week on which November 10, 11 and 14 fell in 1994. November 10, 1994, was the date on which the plaintiff was given a written warning by Dodge. November 14, 1994, was the date on which the plaintiff was terminated after having worked for only one hour. The plaintiff testified that she had received the written warning late in the day on November 10 and then had left for the weekend. Upon her return to work on November 14, she was fired after only one hour. On cross-examination, the plaintiff's counsel asked Dodge whether November 10, 1994, had fallen on a Thursday or a Friday. Dodge

replied that she did not remember. The plaintiff's counsel then was able to elicit testimony from Dodge, using pay stubs to refresh her memory, that November 10 must have been a Friday, that the Veterans Day holiday was on Monday, November 13, 1994, and that the date of the plaintiff's termination, November 14, 1994, was on a Tuesday. On redirect, the defense posed a mere six questions to Dodge, none of which related to the period from November 10 to November 14, 1994.

"Our standard of review for evidentiary matters allows the trial court great leeway in deciding the admissibility of evidence. The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done. . . . The exercise of such discretion is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law." (Internal quotation marks omitted.) *Bunting* v. *Bunting*, 60 Conn. App. 665, 670, 760 A.2d 989 (2000).

"Whether or not a trial court will permit further evidence to be offered after the close of testimony in the case is a matter resting within its decision. . . . In the ordinary situation where a trial court feels that, by inadvertence or mistake, there has been a failure to introduce available evidence upon a material issue in the case of such a nature that in its absence there is serious danger of a miscarriage of justice, it may properly permit that evidence to be introduced at any time before the case has been decided." (Citations omitted; internal quotation marks omitted.) *Fahey* v. *Safeco Ins. Co. of America*, 49 Conn. App. 306, 315, 714 A.2d 686 (1998).

Here, the jury reasonably could have found that the plaintiff was given the warning letter late in the day on November 10, 1994, then went home for a three day

weekend and was terminated after working for one hour on November 14, 1994. In fact, the plaintiff and defendant agreed on those points at trial. The defendant sought to open its case and to enter the calendar into evidence to settle the dispute as to whether the Veterans Day holiday fell on Friday, November 11, 1994, or Monday, November 13, 1994. Regardless, there is no question that the plaintiff did not work on Veterans Day and that her first day back to work after receiving the warning letter was November 14, 1994. We fail to see how the day of the week in 1994 on which Veterans Day fell constitutes a material issue. The defendant was afforded ample opportunity on redirect examination of Dodge to correct her testimony if it so chose.

The trial court acted within its discretion when it denied the defendant's motion to open its case and to enter the calendar into evidence. We find no evidence of any abuse of discretion on the part of the court. We further can find no evidence of a serious danger of miscarriage of justice due to the defense's failure to correct Dodge's testimony.

## II

The defendant next claims that the court improperly denied its motion for a remittitur of economic damages for back wages because the plaintiff had an unreasonable expectation of continued employment with the defendant and voluntarily removed herself from the workforce for a period of time to have a child. We disagree.

The jury reasonably could have found the following facts regarding the plaintiff's damages. The plaintiff claimed damages of $12 an hour for forty hours a week, which amounted to $480 a week for fifty-two weeks a year over a period of four years and ten months (the time from her termination to the time of trial). Those damages totaled $120,640. After her termination from

Town House, Duval promised her other employment positions, but never rehired her. The plaintiff applied for work at Chappelle Gardens, another housing complex, but was denied employment. During this period, the plaintiff worked full-time at a child care center for eleven months for a total income of $11,440. The plaintiff collected $1196 in unemployment compensation. The plaintiff earned $564.64 for child care that she had provided in her home and $600 for part-time work in a convenience store. Once those earnings were deducted from the claim of $120,640, the plaintiff's net claim was $118,000, including interest. Although the defendant cross-examined the plaintiff at trial, it failed to question her on the subject of economic damages.

No evidence was adduced at trial, by either party, concerning the plaintiff's excusing herself from the workforce to give birth. On appeal, the defendant again fails to make any specific allegations concerning a time period during which the plaintiff may have ceased job hunting efforts due to the birth of a child.

"Litigants have a constitutional right to have factual issues resolved by the jury. . . . This right embraces the determination of damages when there is room for a reasonable difference of opinion among fair-minded persons as to the amount that should be awarded. . . . The amount of a damage award is a matter peculiarly within the province of the trier of fact, in this case, the jury. . . . The size of the verdict alone does not determine whether it is excessive. The only practical test to apply to [a] verdict is whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption." (Internal quotation marks omitted.) *Ham* v. *Greene*, 248 Conn. 508, 536, 729 A.2d 740, cert.

denied, 528 U.S. 929, 120 S. Ct. 326, 145 L. Ed. 2d 254 (1999).

"[A] jury's determination of damages should be set aside only when the verdict is clearly exorbitant and excessive . . . or the size of the verdict is so shocking to a sense of justice that it leads us to the conclusion that the jury was influenced by prejudice, partiality, mistake or corruption." (Citation omitted; internal quotation marks omitted.) *Morales* v. *Pentec, Inc.*, 57 Conn. App. 419, 435, 749 A.2d 47 (2000).

"Evidence offered at trial relevant to damages must be reviewed in the light most favorable to sustaining the verdict. . . . Every reasonable presumption in favor of the correctness of the court's refusal to set aside the verdict as excessive should be indulged . . . and its ruling will not be disturbed unless there is a clear abuse of discretion." (Internal quotation marks omitted.) *Barry* v. *Posi-Seal International, Inc.*, 40 Conn. App. 577, 582, 672 A.2d 514, cert. denied, 237 Conn. 917, 676 A.2d 1373 (1996).

"When damages are claimed they are an essential element of the plaintiff's proof and must be proved with reasonable certainty. . . . Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty." (Citations omitted; internal quotation marks omitted.) *Gaudio* v. *Griffin Health Services Corp.*, 249 Conn. 523, 554, 733 A.2d 197 (1999).

"We have often said in the contracts and torts contexts that the party receiving a damage award has a duty to make reasonable efforts to mitigate damages. . . . What constitutes a reasonable effort under the circumstances of a particular case is a question of fact for the trier. . . . Furthermore, we have concluded that the breaching party bears the burden of proving that the nonbreaching party has failed to mitigate dam-

ages." (Citations omitted; internal quotation marks omitted.) *Anne Howard's Apricots Restaurant, Inc.* v. *Commission on Human Rights & Opportunities*, 237 Conn. 209, 229, 676 A.2d 844 (1996).

The jury was presented with ample evidence to support its finding of economic damages in the amount of $118,000 for the plaintiff. Once a jury has decided that the plaintiff was wrongfully discharged, it is free to determine damages in accordance with the court's instructions. In this case, there was no counter evidence challenging the plaintiff's damages claim presented by the defense at trial. Further, the defense presented the court with no legal authority to substantiate its claim that the plaintiff may not recover for the entire period of her unemployment, simply because the defendant stopped managing Town House two years after the plaintiff's dismissal.

The defendant cites *Barry* v. *Posi-Seal International, Inc.*, supra, 40 Conn. App. 577, to support the contention that a damage award should be supported by the evidence adduced at trial. We find that the damage award here is supported by the evidence adduced at trial. We find no evidence here of a damage award so overly large as to "shock the conscience." The jury, in its discretion, awarded to the plaintiff damages for back wages that she had requested, deducting unemployment compensation and wages that she had earned during her period of unemployment. The $2500 beyond this amount that the jury awarded as noneconomic damages does not begin to approach a level that we would find shocking to our sense of justice. The court acted well within its discretion in denying the defendant's motion for a remittitur, and we will not disturb a jury award based so clearly on the evidence.

### III

The defendant's final claim is that insufficient evidence was adduced at trial to support the verdict. We disagree.

"Evidence is sufficient to sustain a verdict where it induces in the mind of the [trier] that it is more probable than otherwise that the fact in issue is true. . . . It is the province of the trier of fact to weigh the evidence presented and determine the credibility and effect to be given the evidence. . . . On appellate review, therefore, we will give the evidence the most favorable reasonable construction in support of the verdict to which it is entitled. . . . In analyzing a sufficiency of the evidence claim, the test that we employ is whether, on the basis of the evidence before the jury, a reasonable and properly motivated jury could return the verdict that it did." (Internal quotation marks omitted.) Id., 580.

"A court is empowered to set aside a jury verdict when, in the court's opinion, the verdict is contrary to the law or unsupported by the evidence. . . . A verdict should not be set aside, however, where it is apparent that there was some evidence on which the jury might reasonably have reached its conclusion." (Citation omitted; internal quotation marks omitted.) *PAR Painting, Inc.* v. *Greenhorne & O'Mara, Inc.*, 61 Conn. App. 317, 322, 763 A.2d 1078, cert. denied, 255 Conn. 951, 770 A.2d 31 (2001). It is apparent here that there was ample evidence on which the jury reasonably could have reached its conclusion.

The judgment is affirmed.

In this opinion the other judges concurred.