# IN RE LATIFA K. ET AL.*
## (AC 20950)

Foti, Schaller and O'Connell, Js.

Argued September 18, 2001—officially released January 29, 2002

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*William R. Kinloch,* for the appellant (respondent father).

*Mary K. Lenehan,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Susan T. Pearlman,* assistant attorney general, for the appellee (petitioner).

*Opinion*

SCHALLER, J. The respondent father[1] appeals from the judgments of the trial court terminating his parental rights with respect to his minor children, L and S. On appeal, the respondent claims that the court improperly (1) denied his motion to amend the petitions to terminate his parental rights filed by the petitioner and (2) denied his request to strike a sentence in a social study as inadmissible hearsay. We affirm the judgments of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. At the time of trial, the respondent was twenty-eight years old. He did not complete high school and began using marijuana at age fifteen. The respondent began living with the children's mother sometime in 1992 or 1993, and the twin children were born on February 14, 1994. At birth, both children tested positive for cocaine. The department of children and families (department) offered to provide both parents substance abuse treatment, but

---

[1] Because there was no record or decision with regard to the respondent mother, the trial court ordered a trial concerning the mother's parental rights with respect to the two children. We refer in this opinion to the respondent father as the respondent.

the mother refused and the respondent denied abusing substances.

On April 13, 1995, the respondent was arrested for robbery. As a result of that arrest, he was sentenced to fifteen years incarceration, execution suspended after eight years, and three years of probation. On July 12, 1996, the commissioner of children and families (commissioner) filed neglect petitions with regard to the two children. The commissioner obtained orders of temporary custody for the children on September 13, 1996.

Prior to March, 1997, the respondent did not visit regularly with the children. After a paternity test in March, 1997, confirmed that the respondent was the father, the respondent began monthly visitation with the children at the prison. The respondent missed some visits and was late for others. In August, 1997, disciplinary action taken against the respondent resulted in his losing a visit with his children.

On June 3, 1998, the commissioner filed petitions to terminate the parental rights of the respondent with respect to his children. The petitions alleged, in relevant part, that the respondent had failed to achieve personal rehabilitation within the meaning of General Statutes (Rev. to 1997) § 17a-112 (c) (3) (B).[2] Initially, the case was tried against the respondent on November 9, 1998, in Waterbury. Because no written or oral decision was rendered within the 120 days as required by General Statutes § 51-183b, a mistrial resulted.

[2] General Statutes (Rev. to 1997) § 17a-112 (c) provides in relevant part: "The Superior Court . . . may grant a petition filed pursuant to this section if it finds by clear and convincing evidence . . . (3) that . . . (B) the parent of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

In February, 1999, the respondent was discharged from the prison's tier IV drug program due to an unexcused absence. He did not request that the department treatment plan reviews take place at the prison despite the department's offers to that effect. He did, however, complete a variety of prison programs over the course of his incarceration.

In early 1999, the children exhibited increased opposition toward the respondent. In addition, they experienced nightmares and engaged in self-injurious behaviors. In March, 1999, a psychologist found that there was no bond between the respondent and his children and that the children instead were bonding with their new foster family. The psychologist recommended discontinuing visits, and the department adopted the recommendation.[3] The respondent was released from prison in January, 2000, and placed on parole.

A consolidated second trial of the petitions to terminate the respondent's parental rights took place in the Superior Court in Middletown on April 28 and May 9, 2000. At that time, the respondent lived with his sister and was employed at both a full-time and part-time job. The children were living in their foster home, and their foster parents expressed a strong desire to adopt them. Prior to the second trial, the respondent filed a motion to amend the termination petitions pursuant to Practice Book § 35-1 (c).[4] After hearing oral argument, the trial court denied that motion. On May 15, 2000, the Superior

[3] The respondent did not challenge this decision until February or March, 2000.

[4] Practice Book § 35-1 (c) provides: "A petition may be amended at any time by the judicial authority on its own motion or in response to the motion of any party prior to any final adjudication. When an amendment has been so ordered, a continuance shall be granted whenever the judicial authority finds that the new allegations in the petition justify the need for additional time to permit the parties to respond adequately to the additional or changed facts and circumstances."

Court granted the petitions to terminate the respondent's parental rights. Additional facts will be set forth as necessary.

I

On appeal, the respondent first claims that the court improperly denied his motion to amend the termination petitions. We are not persuaded. At the outset, we note our standard of review. In so doing, we also note the unusual factual scenario underlying this claim due to the respondent's use of Practice Book § 35-1 (c). While § 35-1 (c) provides that a petition may be amended by the court in response to a motion by "any party," that rule of practice is usually relied on by petitioners who seek to amend petitions that they themselves have filed. Here, in contrast, the *respondent* has filed a motion requesting that the court amend the petitions filed by the petitioner.

Despite this oddity, our standard of review regarding Practice Book § 35-1 and motions to amend is settled. We will not disturb the trial court's decision regarding amendments to a petition unless there has been an abuse of discretion. *In re Angellica W.*, 49 Conn. App. 541, 548, 714 A.2d 1265 (1998).

In the present case, the respondent's proposed amendment sought to add allegations that at the time of trial, the respondent had been discharged from incarceration, was fully compliant with all the conditions of his probation and was employed full-time. In addition, the amendment also sought to add an allegation that the respondent had commenced an administrative hearing to reinstate his visitation with the children. Therefore, by way of the motion to amend, the respondent attempted to make substantive changes to the petitions by adding facts that existed not on the date of the filing of the petitions but rather at the time of trial.

The trial court denied the respondent's motion after a full hearing on the matter. In denying the motion, the court stated that "[it did] not believe that a respondent [could] decide through the court what the petitioner has to prove." The respondent did not seek an articulation of the trial court's decision.

The trial court's decision was correct because the amendments that the respondent proposed in his motion, in essence, would have required the petitioner to prove the defenses that the respondent wanted to assert. Because the burden is on the petitioner to prove the allegations of the petitions, the requested changes, as the trial court pointed out in its decision, would have put the petitioner in the position of proving allegations that she did not necessarily believe. See id. (noting trial court's correct statement that petitioner has right to amend and allege whatever she wants, but that burden is on petitioner to prove allegations).

To allow the respondent to amend the petitions filed by the commissioner in light of this burden would work a substantial injustice to the commissioner by requiring the commissioner to prove the position of the respondent, rather than her own. We therefore conclude that the court did not abuse its discretion in denying the respondent's motion to amend the petitions.

The respondent also argues that by denying the motion to amend, the court could not and did not consider in the adjudicatory phase of the termination proceedings whether he had achieved personal rehabilitation over the last eighteen months because in that phase, the court can review only facts and events that occurred up to the filing of the petitions or the latest amendment. We disagree.

Practice Book § 33-3 (a) provides that "[i]n the adjudicatory phase, the judicial authority is limited to events preceding the filing of the petition or the latest amend-

ment." Our case law explains how this rule of practice is applied in termination proceedings. "A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition." (Internal quotation marks omitted.) *In re Roshawn R.*, 51 Conn. App. 44, 52, 720 A.2d 1112 (1998). "In the adjudicatory phase of termination proceedings, the court determines the validity of the grounds alleged in the petition, and therefore is limited to events preceding the filing date of the petition. In the disposition phase, the court is concerned with what action should be taken in the best interests of the child, and in that phase the court is entitled to consider facts occurring until the end of the trial." *In re Romance M.*, 30 Conn. App. 839, 859, 622 A.2d 1047 (1993), appeal dismissed, 229 Conn. 345, 641 A.2d 378 (1994).

Despite Practice Book § 33-3 (a) and case law regarding termination proceedings generally, we have determined that with regard to termination petitions brought under § 17a-112 (c) (3) (B), the trial court may, in the adjudicatory phase, properly consider facts and events that occur after the filing date of the petition in determining whether a respondent has achieved a sufficient degree of personal rehabilitation within the meaning of that statute. See *In re Stanley D.*, 61 Conn. App. 224, 230, 763 A.2d 83 (2000). In *In re Stanley D.*, we addressed a claim that the trial court improperly found that the respondent had not achieved sufficient personal rehabilitation within the meaning of § 17a-112 (c) (3) (B). Id., 225. In our explanation of the requirements of § 17a-112 (c) (3) (B) and the hearing process for petitions to terminate parental rights based on that section, we stated that " '[p]ersonal rehabilitation' refers to the reasonable foreseeability of the restoration of a parent to his or her former constructive and useful role as a parent, not merely the ability to manage his or her own life. . . . In the adjudicatory phase, the court may

rely on events occurring after the date of the filing of the petition to terminate parental rights when considering the issue of whether the *degree of rehabilitation* is sufficient to foresee that the parent may resume a useful role in the child's life within a reasonable time." (Citation omitted; emphasis in original.) Id., 230. The respondent, therefore, cannot prevail on his claim that the court could not consider whether he had achieved personal rehabilitation during the eighteen months subsequent to the filing of the petitions.

In the adjudicatory phase of the present case, the court determined that the commissioner established by clear and convincing evidence that the respondent had failed to achieve sufficient personal rehabilitation within the meaning of § 17a-112 (c) (3) (B).[5] While the respondent further argues that the court did not consider facts that occurred subsequent to the June, 1998 filing of the termination petitions, our review of the trial court's memorandum of decision discloses the opposite. In its decision, the court stated: "The father's incarceration from 1995 through and well after the end of the adjudicatory period as a result of his own criminal conduct sufficiently establishes that he failed to rehabilitate . . . ." The court also noted that there was no "basis for finding that, at the end of the adjudicatory period in June, 1998, the father could have assumed a responsible position in the children's lives 'within a reasonable time.'" While that statement focuses on the time period prior to the date of the petitions, the court further stated: "Even assuming that, in June, 1998, the father was certain to be paroled in January, 2000, that intervening period of eighteen months is not a 'reasonable time.' By January, 2000, the father had been in prison for almost five years of the [children's] lives."

[5] The petition also alleged another ground for termination, which is not relevant to this appeal because the trial court determined that the commissioner failed to prove the allegation.

Additionally, the memorandum of decision discloses that the court reviewed the father's interaction with his children from prison during the adjudicatory period, which ended in June, 1998, as well as at subsequent times. It stated that "[d]uring 1997, the father's attendance at visits was not exemplary. Although some visits in 1998 went quite well, the [children] started reacting adversely to visits in 1999."

On the basis of our review of the memorandum of decision, we do not agree with the respondent that the court did not take into consideration facts from the eighteen months after the filing of the petitions in the adjudicatory phase. Therefore, this argument also must fail.[6]

Because we have determined that the court could, and did, take facts into account from beyond the adjudicatory period in making its decision in the adjudicatory phase, we conclude that the trial court did not abuse its discretion in denying the respondent's motion to amend the termination petitions.

II

The respondent also claims that the court improperly admitted hearsay evidence that was contained in the social study during the adjudicatory phase of the trial. The following additional facts are necessary for our resolution of this claim. During the trial, the respondent objected to the admission of a letter written by an

---

[6] We note that the respondent also makes another argument within his claim that the court improperly denied the motion to amend. The respondent asserts that the commissioner's pleadings were stale because eighteen months had passed between the time that the petitions were originally filed in 1998 and the second trial. We need not decide whether this eighteen month period requires the petitions to be updated because we have determined that the court did take into account facts that occurred after the date that the petitions were filed. Therefore, even if the allegations were out of date, the respondent's argument must fail based on the trial court's consideration of events after 1998.

officer of the department of correction to the department of children and families. The letter, which was included as part of the social study, concerned conduct of the respondent during his period of incarceration. The court sustained the respondent's objection and refused to admit the letter into evidence. The court, however, did admit the remainder of the social study.

During cross-examination, the author of the social study testified that she had quoted a sentence from the excluded letter elsewhere in the social study. The sentence related observations concerning the respondent's visitation with the children during his incarceration.[7] The author of the social study also testified that other social workers had made observations similar to those made by the correctional officer and quoted in the social study. In addition, another department worker testified at trial that the respondent had missed visitation as a result of being put in segregation during a period in 1997.

The respondent requested that the court strike the portion of the social study that quoted the sentence from the excluded letter. The court denied the respondent's request. Without deciding whether the portion of the social study sought to be excluded falls within any of the exceptions to the hearsay rule, we conclude that the admission of the sentence in the social study, even if improper, was harmless.

We first note our standard of review. "Our standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a

---

[7] The challenged portion of the social study provides: "On July 7, 1997, [the department] received a letter from Craig Gallick, CRSO II at Cheshire Correctional Institute, which indicated that [the respondent] was showing lack of initiative to get to the visitation room in a timely fashion which was impacting the amount of time he was able to visit with his [children]."

showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Rolli*, 53 Conn. App. 269, 275, 729 A.2d 245, cert. denied, 249 Conn. 926, 733 A.2d 850 (1999). Additionally, it is well settled that even if the evidence was improperly admitted, the respondent must also establish that "the ruling was harmful and likely to affect the result of the trial." *In re Amneris P.*, 66 Conn. App. 377, 382, 784 A.2d 457 (2001).

In this case, we conclude that the challenged evidence was not harmful because the court heard other properly admitted evidence that related similar information. Our review of the record discloses that another department worker testified that problems existed in 1997 regarding the respondent's visitation with his children as a result of his segregation from the prison community. In addition, the court was provided with documentation of the respondent's behavior and disciplinary record in prison to support this testimony. This evidence supports the court's finding that "[d]uring 1997, the father's attendance at visits was not exemplary." The disputed sentence in the social study therefore did not likely affect the result of the trial because it merely reiterated other properly admitted testimony regarding the respondent's visitation with the children in 1997.

Moreover, the respondent has not established that the admission of the challenged evidence likely affected the court's decision because the court based its decision in the adjudicatory phase on a number of findings. The court found that the respondent's "incarceration from 1995 through and well after the end of the adjudicatory period as a result of his own criminal conduct sufficiently establishe[d] that he failed to [achieve personal] rehabilitat[ion]." The court also found that the respondent, as a prisoner, could not assume a responsible

position in the life of his children or tend to their daily needs.

As we previously noted, the court found no basis for concluding that at the end of the adjudicatory period in June, 1998, the respondent could have assumed a responsible position in the children's lives "within a reasonable time." The court also found that by January, 2000, the respondent had been in prison for almost five years of the children's lives and that although some of the visits in 1998 went well, the children reacted adversely to his visits in 1999 and they were not bonded with him. Evidence of the respondent's poor disciplinary record in prison further supported the court's conclusion.

In light of the other evidence, specifically the evidence regarding the respondent's poor prison record, and the trial court's varied findings that it relied on to decide that the respondent had not achieved personal rehabilitation, we conclude that the evidence in question would not have affected the outcome of the trial. Given the court's findings and the ample evidentiary support for its decision, the respondent has failed to establish that the admission of the sentence in the social study was harmful.

The judgments are affirmed.

In this opinion the other judges concurred.