## MADOLYN PARKER *v.* PAUL SLOSBERG, EXECUTOR (ESTATE OF MILTON O. SLOSBERG), ET AL.
### (AC 21936)

Schaller, Mihalakos and Dupont, Js.

Argued June 12—officially released October 29, 2002

*Renee Marie Houle*, for the appellants (defendants).

*Peter J. Bartinik, Jr.*, for the appellee (substitute plaintiff).

*Opinion*

MIHALAKOS, J. In this breach of contract action, the defendant, Paul Slosberg,[1] appeals from the judgment of the trial court, rendered after a jury trial, which awarded a sum of $97,459.51 to the plaintiff.[2] The defendant claims that the court improperly (1) denied three separate motions in limine, (2) permitted the jury to decide the issue of whether the corpus of a cash management account, which is at the center of this appeal, was a gift, (3) denied his motion for judgment notwithstanding the verdict and (4) denied his motion to reduce the verdict. We affirm the judgment of the trial court.

---

[1] Paul Slosberg, the named defendant, is a party to this action in his capacity as both the executor of the estate of his deceased father, Milton O. Slosberg, and as the trustee for the Milton O. Slosberg Revocable Trust. In this opinion, we refer to Paul Slosberg as a singular defendant and to his father as Slosberg.

[2] Madolyn Parker, the named plaintiff in this action, died on September 6, 2000. The executrix of Parker's estate, Robyn L. Monroe, has been substituted in the place of Parker as the acting plaintiff. For our convenience, we will refer to Parker by name and to Monroe as the plaintiff.

The jury reasonably could have found from clear and satisfactory evidence the following facts.[3] In 1959, Milton Slosberg hired Madolyn Parker to be his personal secretary and the office manager for the Griswold Hotel in Groton.[4] Parker worked for Slosberg at the hotel until it was sold in 1968. Parker then worked for Slosberg at his lumber business. When Slosberg started a real estate business in 1980, which was comprised of three companies, Parker worked for him as an office manager and became responsible for the operation of an apartment complex in Danielson. Although Slosberg died in July, 1997, Parker continued to work for his real estate companies. In January, 1998, however, Parker was terminated from that position by the defendant.

Beginning in 1980, and continuing until his death, Slosberg promised Parker that he would provide for her retirement. Specifically, he promised Parker that she would receive monthly payments from an account and that on his death, she would receive the balance of that account.[5] In 1994, Slosberg opened a Merrill Lynch cash management account through financial consultant Dennis L. Witkowski. About $100,000 in bonds comprised the corpus of the account. Slosberg informed

---

[3] "In Connecticut, in order to recover on a claim arising out of alleged services rendered to a decedent, the plaintiff must prove his case by 'clear and satisfactory' proof." *Ubysz* v. *DiPietro*, 185 Conn. 47, 58, 440 A.2d 830 (1981). In this case, the parties do not dispute that this standard was applicable.

[4] In addition to their business relationship, Parker and Slosberg had a close, personal relationship. Parker loved and trusted Slosberg and they maintained a romantic relationship from as early as 1961. Slosberg also paid Parker's bills from approximately 1961 through 1997. Further, he bought her flowers, cars, perfume, jewelry and property in Florida and Connecticut, and he took her on vacations. Virtually every Sunday evening for fifteen years, regardless of either person's location, Slosberg called Parker on the telephone. In 1967, Parker divorced her husband.

[5] Although Parker also alleged in her complaint that Slosberg promised her one-third of the proceeds from the sale of the apartment complex at which she had worked, the jury found against her on that claim. That portion of the verdict is not at issue here.

Witkowski that the account was for Parker's benefit in her retirement years because of her many years of faithful service in his business. Slosberg also directed Witkowski to make monthly payments from the account to Parker and to remit the balance of the account to her when he died. Nevertheless, when Slosberg died, his will directed that all of his assets were to be placed in a revocable trust, which named members of his family as current and future beneficiaries.

Between 1994 and 1997, per Slosberg's oral instructions and a letter of instruction, Parker received $1300 per month from the account. In 1996, Parker added to the account certain stock certificates that she owned. In July, 1997, shortly after Slosberg's death, the defendant and Dudley G. Andersen[6] contacted Merrill Lynch in an effort to transfer the corpus of the account into Slosberg's revocable trust for the benefit of his surviving family.[7] As a result of those efforts, the account was frozen and payments from the account to Parker ceased immediately. Nevertheless, until the termination of Parker's employment, the defendant compensated Parker monthly from Slosberg's estate for her continued employment with the family real estate companies.[8]

On September 16, 1998, Parker filed a complaint against the defendant in his capacity as executor of Slosberg's estate and as trustee of a trust established by Slosberg. See footnote 1. Parker claimed, inter alia, that Slosberg breached his promise to provide her a retirement pension, to be paid out of his estate, "in exchange for her loyal work performance." Further,

---

[6] Andersen is Slosberg's son-in-law and the other executor of Slosberg's estate.

[7] That action was possible because Andersen had obtained a general power of attorney signed by Slosberg about one week before Slosberg's death.

[8] The defendant set the amount of compensation Parker received at this time on the basis of a conversation he had with Parker following Slosberg's death.

Parker claimed that she relied on the promise and had fulfilled her end of the bargain by "diligently and loyally performing her duties for almost [forty] years." She also claimed that Slosberg's estate would be unjustly enriched if it were permitted to keep the moneys Slosberg had promised to her. On May 3, 2001, in an amended complaint filed after Parker's death; see footnote 2; the plaintiff specified that Slosberg's promise included a $1300 monthly payment from the Merrill Lynch account while he was alive and that the balance of that account would be paid to Parker on his death.

Following a jury trial, the plaintiff was awarded $97,459.51, which was the value of the Merrill Lynch account. As indicated by jury interrogatories, the jury found that the plaintiff had proved by "clear and satisfactory" evidence[9] that Parker and Slosberg had an implied contract, and that the defendant had breached that contractual obligation. The jury further found that this breach required that the plaintiff receive Parker's retirement benefit from the balance of the Merrill Lynch account, as it was valued at the time of Slosberg's death. Following the verdict, the defendant filed motions for a judgment notwithstanding the verdict and to reduce the verdict. Both motions were denied. This appeal followed. Additional facts and procedural history will be provided as relevant.

I

The defendant first claims that the court improperly denied three of his motions in limine. We will briefly address our disagreement with the defendant's first two evidentiary challenges. We decline, however, to review his third claim because it is inadequately briefed.

On appeal, a court's evidentiary rulings will be overturned "only where there was an abuse of discretion

---

[9] The parties agreed at oral argument that the "clear and satisfactory" standard of proof is the same as the "clear and convincing" standard.

and a showing by the defendant of substantial prejudice or injustice. . . . In reviewing claims that the court abused its discretion, every reasonable presumption should be made in favor of upholding the court's ruling." (Citation omitted; internal quotation marks omitted.) *Kalas* v. *Cook*, 70 Conn. App. 477, 486, 800 A.2d 553 (2002). As we repeatedly have stated, "[r]elevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative." (Internal quotation marks omitted.) *State* v. *Kelly*, 256 Conn. 23, 54, 770 A.2d 908 (2001). "Additionally, it is well settled that even if the evidence was improperly admitted, the [defendant] must also establish that the ruling was harmful and likely to affect the result of the trial." (Internal quotation marks omitted.) *In re Latifa K.*, 67 Conn. App. 742, 752, 789 A.2d 1024 (2002). Bearing those precepts in mind, we now address the defendant's evidentiary claims.

A

The following additional procedural history is relevant to our disposition of the defendant's first two claims. In his first motion in limine, the defendant sought to preclude the admission of evidence concerning the assets in Slosberg's estate and trust. The defendant argued that permitting such evidence would confuse the jury and prevent it from deciding the case on its merits instead of on the basis of sympathy and fueled by the deep pockets of the estate and trust. The court granted in part and denied in part the defendant's motion. Specifically, the court ruled that no reference

could be made to the estate's or to the trust's "ability to pay." The court noted, however, that it would allow "the amount [of Slosberg's assets] into evidence because it has to do with . . . the work that [Parker] performed for what she is claiming." The court expounded on its ruling later in the trial: "[T]he claim basically is that [Parker] performed services in assisting Mr. Slosberg in managing his affairs. And so, I suppose [the value of Slosberg's assets] goes to the value of her services . . . . And so, I suppose showing . . . what he had that she assisted him with is relevant to that claim."

The defendant's second motion in limine unsuccessfully sought to bar the introduction of an unsigned letter that Parker typed at the direction of Slosberg, indicating his desire that she receive $100,000 in bonds as her pension on his death. The defendant claimed at trial that the letter was not authenticated properly and that it did not fall under any exception to the hearsay rule. The court overruled the defendant's objection to the letter's authentication and ruled that the evidence was admissible because it complied with the requirements of General Statutes § 52-172.[10]

Having reviewed the record pertinent to the defendant's first two claims, we conclude that in each instance, the challenged evidence had a logical tendency to aid the trier of fact in the determination of an issue, even if only to a slight degree. Thus, making every reasonable presumption in favor of the court's rulings, we conclude that the court did not abuse its discretion. Even if the challenged evidence in those instances was

---

[10] General Statutes § 52-172 provides in relevant part: "In actions by or against the representatives of deceased persons, and by or against the beneficiaries of any life or accident insurance policy insuring a person who is deceased at the time of the trial, the entries, memoranda and declarations of the deceased, relevant to the matter in issue, may be received as evidence. . . ."

admitted improperly, however, the defendant has not demonstrated that the admissions, separately or together, substantially prejudiced the jury or were likely to affect the result of the trial.

### B

The defendant's third motion in limine challenged the admissibility of evidence relating to the "meretricious" relationship between Parker and Slosberg. The defendant's brief on the claim, however, fails to set forth adequately which specific evidence the court admitted, the objections, the grounds for the objections, the claimed grounds for admissibility or the evidentiary rulings by the court that allow for review of the claim. "When raising evidentiary issues on appeal, all briefs should identify clearly what evidence was excluded or admitted, where the trial counsel objected and preserved his rights and why there was error. . . . The mere assertion in a brief that evidence was improperly excluded, coupled with transcript page references, will not be sufficient. . . . For evidentiary rulings claimed to be improper to be reviewed by this court, they must be set forth in the briefs as required and outlined by the rules of practice." (Citations omitted; internal quotation marks omitted.) *Kelley* v. *Tomas*, 66 Conn. App. 146, 171–72, 783 A.2d 1226 (2001); see Practice Book § 67-4 (d) (3). We decline, therefore, to review the defendant's third evidentiary claim.

### II

The defendant next claims that the court improperly permitted the jury to decide whether the corpus of the Merrill Lynch account was a gift or consideration for an implied contract.[11] In other words, the defendant

---

[11] The defendant presented the issue in his brief as follows: "As a matter of law, the cash management account was an uneffectuated gift and, as such, was an issue for the court and not the jury; the trial court erred when it failed to find [that] the cash management account was an uneffectuated gift." The defendant then cites, however, an abuse of discretion standard of review related to the admissibility of evidence. Nevertheless, the defen-

claims that the court should not have submitted that issue to the jury as a factual matter, but should have ruled on it as a matter of law. We do not agree.

Our Supreme Court has ruled that the question of whether a gift has been made is within the exclusive province of the trier of fact. See *Dalia* v. *Lawrence*, 226 Conn. 51, 70, 627 A.2d 392 (1993); *Kriedel* v. *Krampitz*, 137 Conn. 532, 534, 79 A.2d 181 (1951). Similarly, we have previously ruled that "[t]he existence of a contract is a question of fact to be determined by the trier on the basis of all the evidence." (Internal quotation marks omitted.) *Lussier* v. *Spinnato*, 69 Conn. App. 136, 140, 794 A.2d 1008, cert. denied, 261 Conn. 910, 806 A.2d 49 (2002). At trial, evidence was presented concerning the business and personal relationship between Parker and Slosberg, the nature and terms of an arrangement between the two, and acts taken in furtherance of that arrangement. That evidence raised a quintessential and central issue of fact in this case, namely, whether Slosberg intended to make a gift to Parker or, instead, whether the parties had entered into a contract. Our case law recognizes that such an issue is to be determined by the trier of fact. We conclude, therefore, that the court properly submitted the issue to the jury.

### III

The defendant also claims that the court improperly denied his motion for judgment notwithstanding the verdict. In support of that claim, the defendant contends that the plaintiff failed to demonstrate the existence of an implied contract by clear and satisfactory proof because she never established consideration for the contract. We disagree.

dant goes on to claim that the court improperly declined to decide the issue of whether the account constituted a gift. In light of that inconsistency, we will address the issue only as the defendant has presented it on appeal.

"Appellate review of a trial court's refusal to render judgment notwithstanding the verdict occurs within carefully defined parameters. We must consider the evidence, and all inferences that may be drawn from the evidence, in a light most favorable to the party that was successful at trial. . . . This standard of review extends deference to the judgment of the judge and the jury who were present to evaluate witnesses and testimony. . . . Judgment notwithstanding the verdict should be granted only if we find that the jurors could not reasonably and legally have reached the conclusion that they did reach." (Citations omitted.) *Craine* v. *Trinity College*, 259 Conn. 625, 635–36, 791 A.2d 518 (2002).

We note that in determining whether to grant a motion for judgment notwithstanding the verdict, "the trial court must look at the relevant law that it gave the jury to apply to the facts, and at the facts that the jury could have found based on the evidence. The law and evidence necessarily define the scope of the trial court's legal discretion." *Foley* v. *Huntington Co.*, 42 Conn. App. 712, 725, 682 A.2d 1026, cert. denied, 239 Conn. 931, 683 A.2d 397 (1996). Here, the parties do not dispute that the plaintiff had to prove that there was consideration for an implied contract through clear and satisfactory proof.[12] See footnote 3. The standard of "clear and satisfactory" proof is equivalent to that of "clear and convincing" proof. See C. Tait, Connecticut

---

[12] It almost goes without saying that consideration is "[t]hat which is bargained-for by the promisor and given in exchange for the promise by the promisee . . . ." (Internal quotation marks omitted.) *Osborne* v. *Locke Steel Chain Co.*, 153 Conn. 527, 532, 218 A.2d 526 (1966). We also note that "[t]he doctrine of consideration does not require or imply an equal exchange between the contracting parties." Id. Further, "a contract, express or implied, or some other tacit understanding between persons who are not married to one another which does not rely upon their sexual behavior is enforceable in the courts of this state." *Burns* v. *Koellmer*, 11 Conn. App. 375, 381, 527 A.2d 1210 (1987).

Evidence (3d Ed. 2001) § 3.5.2, p. 141. That burden of persuasion is sustained if the evidence "induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Internal quotation marks omitted.) *Lopinto* v. *Haines*, 185 Conn. 527, 534, 441 A.2d 151 (1981). Although we recognize that this standard of proof is higher than that in the ordinary preponderance of the evidence standard in a civil case, we are mindful that "it is the exclusive province of the trier of fact to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony." (Internal quotation marks omitted.) *Levy, Miller, Maretz, LLC* v. *Vuoso*, 70 Conn. App. 124, 131, 797 A.2d 574 (2002).

As we have stated, the jury reasonably could have found from clear and satisfactory evidence that Parker and Slosberg entered into a binding contract, which called for the balance of the Merrill Lynch account to be turned over to Parker at the time of Slosberg's death. As early as 1980, Slosberg promised Parker that in exchange for her faithful service as an employee, he would provide for her retirement. In 1994, Slosberg established a cash management account with Merrill Lynch. At that time, Slosberg expressed to his Merrill Lynch agent that the account was created for the benefit of Parker's retirement because of her many years of faithful service in his business. Slosberg then ordered the agent to issue a monthly payment to Parker and to remit the balance of that account to Parker on Slosberg's death. From that time, Parker received $1300 per month from Slosberg's account until his death in 1997. Parker, in consideration of and in reliance on Slosberg's promise, worked at several of Slosberg's business ventures and remained in Slosberg's employ until his death.

Finally, in breach of the implied contract, the defendant failed to transfer the balance of the Merrill Lynch account to Parker when Slosberg died.

Although the defendant raises certain conflicts within the testimony of Parker and Witkowski, as well as the potential for a meretricious relationship between the parties being the basis for the contract, the jury was free to credit one version of events over the other, even from the same witnesses. We conclude, therefore, that the jurors reasonably and legally could have reached their conclusion, in accordance with the higher standard of proof utilized in this case, that an implied contract existed between Parker and Slosberg. Thus, considering the evidence and all inferences that may be drawn therefrom in the light most favorable to sustaining the verdict, we conclude that the court properly denied the defendant's motion for judgment notwithstanding the verdict.

## IV

The defendant's final claim is that the court improperly denied his motion to reduce the verdict. More specifically, the defendant argues that the jury's award should be reduced by $10,400, which is the amount of compensation Parker received from the estate for her continued employment with the family's real estate companies. The defendant contends that the jury failed to consider that compensation when determining its award and, therefore, that the court should have reduced the jury's verdict accordingly. We are not persuaded.

Our standard of review is based on principles of contract law.[13] "It is axiomatic that the sum of damages

---

[13] In other contexts, such as personal injury cases, a court's decision on whether to reduce the amount of damages awarded by a jury's verdict rests solely within the court's discretion. See *Meaney* v. *Connecticut Hospital Assn., Inc.*, 250 Conn. 500, 512–13, 735 A.2d 813 (1999). In reviewing such decisions in personal injury cases and the like, we recognize that "[a] jury's determination of damages should be set aside only when the verdict is

awarded as compensation in a breach of contract action should place the injured party in the same position as he would have been in had the contract been performed. . . . The injured party, however, is entitled to retain nothing in excess of that sum which compensates him for the loss of his bargain. . . . Guarding against excessive compensation, the law of contract damages limits the injured party to damages based on his actual loss caused by the breach." (Internal quotation marks omitted.) *Original Grasso Construction Co.* v. *Shepherd,* 70 Conn. App. 404, 413 n.3, 799 A.2d 1083, cert. denied, 261 Conn. 932, 806 A.2d 1065 (2002). As we concluded in part III, the plaintiff proved that Parker had an implied contract with Slosberg and that the balance of the Merrill Lynch account should have been credited to Parker when Slosberg died. The jury's award merely enforced that contract and thereby placed the plaintiff in the position that she would have been in had the contract been performed. In accordance with the contract, therefore, the jury's award reflects the value of the account at the time of Slosberg's death. Moreover, the compensation Parker received in exchange for her continued employment has no bearing on the contract at issue or its value. Accordingly, we conclude that the jury prop-

clearly exorbitant and excessive . . . or the size of the verdict is so shocking to a sense of justice that it leads us to the conclusion that the jury was influenced by prejudice, partiality, mistake or corruption." (Internal quotation marks omitted.) *Gilliard* v. *Van-Court Property Management Services, Ltd.,* 63 Conn. App. 637, 644, 777 A.2d 745 (2001). Moreover, "[e]vidence offered at trial relevant to damages must be reviewed in the light most favorable to sustaining the verdict. . . . Every reasonable presumption in favor of the correctness of the court's refusal to set aside the verdict as excessive should be indulged . . . and its ruling will not be disturbed unless there is a clear abuse of discretion." (Internal quotation marks omitted.) Id.

This, however, is not such a case. The defendant did not base his motion to reduce the verdict on a claim of excessive damages. Rather, he argued his motion from the stance of a contract claim. Similarly, although the defendant refers to the excessiveness standard on appeal briefly, he did not refer to the standard in framing the issue, and he bases his argument solely on contract principles. Thus, as the present case turns on a breach of contract claim, we will review it accordingly.

erly awarded damages on the basis of the actual loss caused by the breach of contract and that the court properly denied the defendant's motion to reduce the verdict.

The judgment is affirmed.

In this opinion the other judges concurred.