## IN RE STANLEY D.*
(AC 20366)

Schaller, Spear and O'Connell, Js.

Argued September 19—officially released December 26, 2000

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Raymond J. Rigat*, with whom, on the brief, was *Matthew T. Gilbride*, for the appellant (respondent father).

*Mary K. Lenehan*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Opinion*

SPEAR, J. The respondent father appeals from the judgment of the trial court terminating his parental rights[1] with respect to his minor child, S, pursuant to General Statutes § 17a-112. The respondent's sole claim is that the court improperly found that he had failed to achieve sufficient personal rehabilitation within the meaning of § 17a-112 (c) (3) (B).[2] We affirm the judgment of the trial court.

---

[1] The court also terminated the parental rights of the respondent mother. Because this appeal concerns only the respondent father, we refer in this opinion to the father as the respondent.

[2] General Statutes § 17a-112 (c) provides in relevant part: "The Superior Court, upon hearing and notice . . . may grant a [termination of parental rights] petition . . . if it finds by clear and convincing evidence . . . (3) that . . . (B) the parent of a child who . . . has been found by the Superior Court to have been neglected or uncared for in a prior proceeding, or (2) is found to be neglected or uncared for and has been in the custody of the commissioner for at least fifteen months and such parent has been provided specific steps to take to facilitate the return of the child to the parent . . . and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

The following facts and procedural history are relevant to this appeal. After S's birth, on November 17, 1994, his pediatrician immediately contacted the department of children and families (department), which then obtained an order of temporary custody. On June 14, 1995, the court adjudicated S as neglected and temporarily returned him to the care of his parents under an order of protective supervision. Soon thereafter, the mother left the respondent because he had abused her physically.[3] On April 18, 1996, the court committed S to the care of the commissioner of children and families (commissioner) for a one year period, which was renewed each year until the adjudication and disposition hearing at issue.

Prior to the hearing, the respondent had a history of unlawful and irresponsible behavior interspersed with attempts at rehabilitation. Several years prior to S's birth, the respondent, then sixteen years old, was convicted of sexual assault in the second degree for having sexual intercourse with a younger teenager. He received a five year prison sentence, suspended after two years, and three years of probation. Between 1994 and 1998, the respondent violated his probation three times. The violations included unsupervised contact with minors, breach of the peace for threatening to kill a department worker and carrying a dangerous weapon. After the third violation, he was placed on probation for an additional two years. At the time of the termination hearing, the respondent was on probation for the weapons charge. The terms of his probation required him to submit to sexual offender evaluation and prohibited him from residing with anyone under the age of sixteen.

In 1997, the respondent engaged in other irresponsible behavior. He refused to allow a parent aide to enter

---

[3] Another female friend of the respondent also reported being physically abused by him.

his home and, on several occasions, denied access to department workers. In one instance, the refusal to admit department workers directly violated a court order to permit their access. Thereafter, the department suspended all unsupervised visits with S at the respondent's home. Eventually, a department worker was allowed into the home, and observed in the attic and basement a number of dogs, including pit bulls, that were covered with feces. Also during 1997, the respondent was discharged from the Catholic Charities therapy program because of poor attendance. In 1998, the respondent completed a parenting and visitation program, but directed several angry outbursts at caseworkers who gave him mixed reviews regarding his parenting abilities. Moreover, the respondent failed to acknowledge S's fourth birthday and never inquired about S's progress in the preschool programs that he attended.

At the time of the termination hearing, the respondent was living in a clean, safe home with his girlfriend and her four children. In addition, the court found that for three years prior to the hearing, the respondent was a reliable, hard-working employee of a small business. The respondent also made great efforts to obtain and attend[4] individual therapy sessions with a licensed social worker concerning his anxiety and lack of parenting skills. At the hearing, his individual therapist testified that she was impressed by his progress during his year of therapy with her.

The respondent failed, however, to keep several scheduled appointments and an open-ended appointment with Robert D. Meier, a court-appointed psychologist. When Meier finally evaluated the respondent, he concluded that the respondent had a problem with anger, not limited to his conflicts with the department,

---

[4] The respondent would often travel three hours by bus and on foot to make appointments.

and that he lacked insight about the impact of his anger on others, including S. Meier recommended that the respondent obtain anger management therapy with a psychologist or psychiatrist who would treat a hostile patient. Meier further recommended against granting joint custody of S to the respondent and S's mother. The respondent visited S regularly at the department's offices and showed affection for him. During some visits, S was excited to see the respondent; however, during others, S acted out in a physically aggressive manner, and was sometimes oppositional and defiant afterward.

From the beginning of 1997 until the time of the termination hearing, S lived in his current foster home and was very comfortable there. He associated well with the other children in the foster home. He referred to his foster parents, who wanted to adopt him, as "mommy" and "daddy." S did not talk to the department worker about his biological parents.

On October 14, 1998, the commissioner filed a petition to terminate the parental rights of the respondent and the mother, alleging failure to achieve personal rehabilitation pursuant to § 17a-112 (c) (3) (B).[5] At the same time, the respondent filed a motion to revoke the commitment of S to the commissioner. After a consolidated hearing, the court denied the motion and granted the termination petition. This appeal followed.

The respondent claims that the court improperly found by clear and convincing evidence that he had failed to achieve personal rehabilitation, and that it was not foreseeable for him to assume a responsible role in S's life within a reasonable time pursuant to § 17a-112 (c) (3) (B). The respondent claims that he was "clearly closer to being able to provide satisfactorily for [S] on the adjudicatory date than he was on the

[5] See footnote 2.

date the child was removed from his custody" because he had (1) maintained a permanent job, (2) secured adequate housing after the filing of the petition, (3) visited S regularly, (4) attended individual therapy before and after the filing of the petition, and (5) not used illegal drugs at any time. We disagree.

Our standard of review is well settled in termination of parental rights cases. We will overturn a finding of fact that a parent has failed to achieve rehabilitation only if it is clearly erroneous in light of the evidence in the record. *In re Eden F.*, 250 Conn. 674, 705, 741 A.2d 873 (1999). We construe the facts in favor of the court's judgment because of the court's opportunity as the trier of fact to scrutinize the evidence, and to hear and observe the witnesses during trial. Id. "We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached." (Internal quotation marks omitted.) Id.; see *In re Luis C.*, 210 Conn. 157, 166, 554 A.2d 722 (1989). Our function is to determine whether the court's conclusions were legally correct and factually supported. *In re Roshawn R.*, 51 Conn. App. 44, 51, 720 A.2d 1112 (1998).

Section 17a-112 (c) (3) (B) allows for the involuntary termination of parental rights when "the parent of a child who . . . has been found by the Superior Court to have been neglected or uncared for in a prior proceeding . . . has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."[6] A hearing on a petition to terminate parental rights consists of two

---

[6] General Statutes § 17a-112 (c) provides for the involuntary termination of parental rights in three additional situations that are not at issue in this case.

phases, adjudication and disposition. In the adjudicatory phase of the proceeding, the court must decide whether there is clear and convincing evidence that a statutory ground for the termination of parental rights exists. Id., 52. Practice Book § 33-3 (a) limits the time period reviewable by the court in the adjudicatory phase to the "events preceding the filing of the petition or the latest amendment." If the court finds clear and convincing evidence of a statutory ground for termination, it then proceeds to the dispositional phase and determines whether termination is in the best interest of the child. *In re Roshawn R.*, supra, 51 Conn. App. 52. The respondent's challenge focuses on the adjudicatory phase of the proceedings.

Section 17a-112 (c) (3) (B) requires the court to determine whether the "degree of personal rehabilitation . . . encourage[s] the belief that within a reasonable time . . . such parent could assume a responsible position in the life of the child . . . ." "Personal rehabilitation" refers to the reasonable foreseeability of the restoration of a parent to his or her former constructive and useful role as a parent, not merely the ability to manage his or her own life. See *In re Shyliesh H.*, 56 Conn. App. 167, 173, 743 A.2d 165 (1999). In the adjudicatory phase, the court may rely on events occurring after the date of the filing of the petition to terminate parental rights when considering the issue of whether the *degree of rehabilitation* is sufficient to foresee that the parent may resume a useful role in the child's life within a reasonable time. See *In re Amber B.*, 56 Conn. App. 776, 785, 746 A.2d 222 (2000); see also *In re Sarah M.*, 19 Conn. App. 371, 377, 562 A.2d 566 (1989).

Rehabilitation "does not require the parent to be able to assume full responsibility for a child without the use of available support programs." *In re Luis C.*, supra, 210 Conn. 167; see also *In re Migdalia M.*, 6 Conn. App.

194, 203, 504 A.2d 533, cert. denied, 199 Conn. 809, 508 A.2d 770 (1986). An inquiry regarding personal rehabilitation requires us to obtain a historical perspective of the respondent's child-caring and parenting abilities. *In re Galen F.*, 54 Conn. App. 590, 594, 737 A.2d 499 (1999). What constitutes a reasonable time is a factual determination that must be made on a case-by-case basis. *In re Michael L.*, 56 Conn. App. 688, 694, 745 A.2d 847 (2000).

The respondent's claim relates to the weight to be given to the evidence and testimony presented. The court, as the trier of fact, is in the best position to determine the weight of the evidence. Our review of the record discloses that in the adjudicatory phase, the court considered the evidence and determined that the respondent had failed to achieve personal rehabilitation sufficiently such that, within a reasonable time, he could assume a responsible role in S's life. We are not persuaded that the court's decision was clearly erroneous.

The court in its memorandum of decision stated: "The court cannot readily conclude that someone, such as the [respondent], who violates his criminal probation during the adjudicatory period has rehabilitated himself. . . . The [respondent], in fact, has a history of threatening and confrontational behavior with [department] workers and other service providers, and of defiance of court orders." The court heard testimony from several department workers, the respondent's individual therapist and a court-appointed psychologist whose testimony supports the court's findings. Moreover, there was clear and convincing evidence that the respondent had threatened a department worker, had angry outbursts during therapy sessions or left sessions early because of his anger, refused to let department workers into his home despite a court order to do so and engaged in domestic violence. In addition, the psychological evaluation ordered by the court recommended long-term confrontational anger therapy.

The court further found in its memorandum of decision that the respondent "also was discharged from a therapy program for poor attendance, failed to attend a psychological evaluation on numerous occasions, engaged in domestic violence, did not develop his parenting skills and, for a period of time, maintained a home that was unsafe and unsanitary for children. For all these reasons, [the department] has proven [the respondent's] failure to rehabilitate . . . by clear and convincing evidence." The court reasonably could have found that the respondent had failed to develop a relationship with or to bond with S on the basis of S's lack of interest in talking about his parents, and the respondent's failure to exhibit interest in his S's schooling and to acknowledge his fourth birthday. We conclude that there was ample evidence to support the court's findings.

The respondent argues that the "simple gauge" to determine whether a parent has achieved rehabilitation is "[whether] the parent, on the adjudicatory date, [is] *any closer* to being able to provide satisfactorily for the neglected child than [he] was on the date the child's custody was removed . . . ." (Emphasis added.) *In re Passionique T.*, 44 Conn. Sup. 551, 564, 695 A.2d 1107 (1996); see also *In re Hector L.*, 53 Conn. App. 359, 367, 730 A.2d 106 (1999) ("ultimate issue [to determine personal rehabilitation] faced by the trial court was whether the respondent was *better able* to resume the responsibilities of parenting at the time of filing the termination petition than he had been at the time of the children's commitment" [emphasis added]).

The respondent contends that *In re Passionique T.* and *In re Hector L.* together narrow the issue of personal rehabilitation to whether the parent was *any* closer to rehabilitation at the time of the filing of the petition than when the child was adjudicated neglected. Because the respondent was closer to resuming his

responsibilities as S's father at the time the commissioner filed the termination petition than he was at the time of S's commitment, the respondent asserts that the court's finding that he could not resume his parental role within a reasonable time was clearly erroneous. We disagree.

The respondent's reliance on *In re Hector L.* and *In re Passionique T.* is misguided. Although the respondent did not have to attain such a degree of rehabilitation that he could resume taking care of the child without assistance, the degree must be more than "*any*" rehabilitation. See *In re Migdalia M.*, supra, 6 Conn. App. 203; see also *In re Michael M.*, 29 Conn. App. 112, 126, 614 A.2d 832 (1992). Section 17a-112 (c) (3) (B) specifically states that the parent must "achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ." *In re Hector L.* and *In re Passionique T.* adhere to that statutory standard. The facts relied on by the respondent in his brief and during oral argument show only that from the adjudicatory date of July 14, 1995, to the filing of the termination petition on October 14, 1998, he improved his ability to manage his life. Although commendable, those improvements are not dispositive on the issue of his ability to care for S.

The record contains sufficient evidence to support the court's conclusion that the respondent failed to achieve rehabilitation and could not, within a reasonable time, assume a responsible position in his son's life. The finding that the respondent had not achieved sufficient personal rehabilitation is, therefore, not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.