## IN RE JENNIFER W. ET AL.*
### (AC 22665)

Bishop, West and Hennessy, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued December 2, 2002—officially released March 11, 2003

*Eugene P. Falco,* for the appellant (respondent mother).

*Susan T. Pearlman,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (petitioner).

*Opinion*

HENNESSY, J. The respondent mother[1] appeals from the judgments of the trial court terminating her parental rights with respect to her two minor children. On appeal, the respondent claims that the court improperly (1) violated her right to due process of law pursuant to the fourteenth amendment to the United States constitution and article first, §§ 8 and 10, of the constitution of Connecticut by failing to consider, in the adjudicatory phase of the termination proceedings, her actions after the petitions were filed and (2) determined that she had failed to achieve a sufficient degree of rehabilitation pursuant to General Statutes (Rev. to 1999) § 17a-112

---

[1] The parental rights of the children's father also were terminated. Only the respondent mother has appealed, and we therefore refer to her in this opinion as the respondent.

(c) (3) (B), as amended by Public Acts 2000, No. 00-137, § 1, and No. 00-196, § 15, now § 17a-112 (j) (3) (B),[2] and, therefore, terminated her parental rights. We affirm the judgments of the trial court.

The following facts and procedural history are relevant to the respondent's appeal. The respondent's first child, a daughter, was born on December 5, 1997. The respondent did not receive prenatal care until two months before the child's birth. The child was born premature and is medically fragile due to bronchial pulmonary disease. The hospital was concerned for the child's well-being as a result of her special needs, the respondent's history of drug use and the possibility that the respondent could not accommodate the child's needs. The family was referred to the newborn high risk unit in the department of children and families (department) in January, 1998, which closely monitors babies who are born to drug addicted parents.

At the time of the department's initial involvement with the family, both parents were referred for substance abuse evaluations, but they resisted. The child was enrolled in a "birth-to-three" program,[3] and the parents were offered parent aid.

---

[2] General Statutes (Rev. to 1999) § 17a-112 (c), as amended by Public Acts 2000, No. 00-137, § 1, and No. 00-196, § 15, now § 17a-112 (j), provides in relevant part: "The Superior Court, upon hearing and notice . . . may grant a [termination of parental rights] petition filed pursuant to this section if it finds by clear and convincing evidence . . . (3) that . . . (B) the child (1) has been found by the Superior Court to have been neglected or uncared for in a prior proceeding, or (2) is found to be neglected or uncared for and has been in the custody of the commissioner for at least fifteen months and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent . . . and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

[3] The "birth-to-three" program was established within the department of mental retardation and was established to assist children who may be developmentally delayed and to assist their parents. See General Statutes § 17a-248 et seq.

In July, 1998, the child was referred to the department by her treating physician because she had a vaginal discharge. The department monitored the family and found that there was ongoing domestic violence in the home and that the respondent continued to use drugs. The respondent was offered treatment for her mental health, domestic violence and substance abuse issues, but she refused to participate. In addition, the respondent was hospitalized for depression and refused treatment services. In April, 1999, another incident of domestic violence occurred, and a restraining order was issued against the child's father.

The respondent's second child, a son, T, was born on July 2, 1999, by the same father while the parents were involved with continuing domestic violence concerns. In August, 1999, T suffered a skull fracture while in the respondent's care. According to a physician's report, the injury was inconsistent with the respondent's account of how it occurred. A report from the treating physician, Frederick B. Berrien, stated: "My major concern is in regard to possible negligence [toward T]. If the child was being appropriately supervised, the [respondent] should have been able to protect the child from the fall or provided a more coherent explanation of the fall." At that time, the respondent again declined support services from the department to address her substance abuse problem.

The respondent's daughter was admitted to a hospital on November 9, 1999, with inflammation and bleeding from the genital region that *could* have resulted from trauma. Following another report from Berrien stating that a "complete investigation of the possibility of sexual abuse must be undertaken," neglect petitions were filed for both children on November 19, 1999. The children were removed from the respondent's home under an order of temporary custody and, after a hearing, were placed in foster care. The department's petitions

stated, inter alia, that both children were neglected in that they were being denied proper care and attention, physically, educationally, emotionally or morally. The petitions also alleged that the children were being permitted to live under conditions, circumstances or associations that were injurious to their well-being and that the children were uncared for in that their home could not provide the specialized care that the physical, emotional or mental condition of the children required. On March 16, 2000, the court found that the children were neglected and uncared for, and committed them to custody of the department.

During the period of commitment to the department, the respondent, despite the department's offer of assistance, continued to refuse to address her mental health, domestic violence and substance abuse problems. On November 7, 2000, the department filed petitions for the termination of the respondent's parental rights with respect to both children. The reasons stated in the department's social study that was filed concurrently with the petitions included the assertion that the "[p]arents have substance abuse, domestic violence, criminal behavior, homelessness, sexual abuse and mental health issues, which they failed to address in order to care for their children" and that the respondent had failed to achieve a sufficient degree of rehabilitation.

In May 2001, the respondent's daughter was placed with a preadoptive foster family that wants to adopt her permanently. She has numerous behavioral problems, including being very oppositional, having tantrums and repeated nightmares, and exhibiting inappropriate sexual behavior. Her preadoptive family has made remarkable progress with the child, but she regresses after visits with the respondent. The court found that the respondent's daughter has bonded with her preadoptive parents and looks to them for support and guidance. T's current placement is with the same preadoptive

family, and the family also wants to adopt T. The court found that T has established a strong bond with his preadoptive family.

According to a report prepared by Kelly Rogers, a licensed psychologist, the respondent superficially interacts with her children. Stephen Humphrey, a licensed clinical psychologist, concurred in that assessment of the respondent's relationship with her children and stated that she may have a problem setting appropriate boundaries for her children.

The respondent had a chaotic upbringing due to significant substance abuse issues in her family. She began drinking at an early age and began using illicit drugs at the age of thirteen. She is a polysubstance abuser and her relationship with her children's father is extremely volatile, which has led to numerous domestic violence arrests. According to Rogers, the respondent's "embitterment is sometimes sufficient to generate clinically significant depression and anxiety, and a diagnosis of depressive disorder, [not otherwise specified], appears appropriate. Borderline and antisocial personality disorders were also indicated." According to a report by Robert Fox, a psychiatrist who treated the respondent following a suicide attempt, she suffers from bipolar disorder.

The court found that the respondent has not significantly addressed the severity of her personality disorder and drops out of rehabilitative programs before completion. Her visitation with her children is inconsistent, and she threatened to kill a department worker if her parental rights were terminated. She also has been arrested on numerous criminal charges, including burglary, robbery, larceny, assault and possession of narcotics. The respondent minimizes her failures by blaming the department for her stress and characterizes the department as unreasonable in its demands.

On August 6, 2001, the hearing on the termination of parental rights began, and testimony was heard over a period of three days. On December 7, 2001, the court filed its memorandum of decision in which it found by clear and convincing evidence that the department had made reasonable efforts to reunify the respondent with her children pursuant to § 17a-112 (c), now (j). The court also found by clear and convincing evidence that the respondent had "failed to rehabilitate to such degree as would encourage the belief, that within a reasonable time, considering the age and needs of [the children], that she could assume a responsible position in [her children's lives]" pursuant to § 17a-112 (c) (3) (B), now (j) (3) (B).

The court found that the respondent did not fully participate in counseling and, according to Humphrey, her "involvement with her children seemed largely superficial and contrived." According to the court, the respondent's primary problems are her impulsivity, poor judgment, oppositional behavior, drug use and her tendency to blame others for her problems. The court also found that "there is a clear risk that her impulsive, oppositional functioning will continue to prolong her chaotic lifestyle and to delay indefinitely the return of the children to her."

After finding that the allegations of the petitions were proven by clear and convincing evidence, the court then determined whether termination was in the best interests of the children. See *In re Roshawn R.*, 51 Conn. App. 44, 52, 720 A.2d 1112 (1998). The court then considered the seven statutory factors and made written findings. See General Statutes (Rev. to 1999) § 17a-112 (d), as amended by Public Acts 2000, No. 00-137, § 1, now § 17a-112 (k);[4] see also *In re Tabitha P.*,

---

[4] General Statutes (Rev. to 1999) § 17a-112 (d), as amended by Public Acts 2000, No. 00-137, § 1, now § 17a-112 (k), provides in relevant part: "[I]n determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The

39 Conn. App. 353, 360, 664 A.2d 1168 (1995). Included in those findings, the court wrote that the respondent failed to engage in the services provided by the department and did not fulfill the specific steps requested to regain custody of her children. The court also stated that the respondent "has not adjusted her circumstances to make it in the best interest of either child to return to her home in the foreseeable future." The court then concluded that there was clear and convincing evidence that it was in the children's best interests to terminate the respondent's parental rights. This appeal followed.

"The standard of review on appeal [from a termination of parental rights] is whether the challenged findings are clearly erroneous. . . . The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged]

timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to the child's parents, any guardian of such child's person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust such parent's circumstances, conduct, or conditions to make it in the best interest of the child to return such child home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions, and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous." (Citations omitted; internal quotation marks omitted.) *In re Clark K.*, 70 Conn. App. 665, 668, 799 A.2d 1099, cert. denied, 261 Conn. 925, 806 A.2d 1059 (2002).

I

The respondent's first claim is that her right to due process, as protected by the fourteenth amendment to the United States constitution,[5] and the constitution of Connecticut, article first, §§ 8 and 10,[6] was violated by the court's failure to consider, in the adjudicatory phase of the hearing, events that took place after the petitions were filed.[7]

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. In the adjudicatory phase of the proceeding, the court must decide whether there is clear and convincing evidence that a statutory ground for the termination of parental rights exists." *In re Stanley D.*, 61 Conn. App.

[5] The fourteenth amendment to the United States constitution provides in relevant part that "[n]o State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

[6] We do not need to consider the respondent's assertion concerning article first, §§ 8 and 10, of the constitution of Connecticut. She provides no separate analysis under the Connecticut constitution. See *State* v. *Reid*, 254 Conn. 540, 553 n.6, 757 A.2d 482 (2000). We further note that our Supreme Court has stated that "the due process provisions of the United States and Connecticut constitutions generally have the same meaning and impose similar constitutional limitations." *In re Dodson*, 214 Conn. 344, 362 n.15, 572 A.2d 328, cert. denied sub nom. *Dodson* v. *Superior Court*, 498 U.S. 896, 111 S. Ct. 247, 112 L. Ed. 2d 205 (1990); see also *Terese B.* v. *Commissioner of Children & Families*, 68 Conn. App. 223, 226 n.6, 789 A.2d 1114 (2002).

[7] The respondent phrases the claim as a failure to give her adequate notice. She is not claiming, however, that she was unaware of the proceedings or that notice of the proceedings was defective. Her claim is more accurately described as a denial of her due process rights because events occurring after the filing of the petitions could be better and more accurate indications of personal rehabilitation and, therefore, should have been considered in the adjudicatory phase of the termination of parental rights hearing.

224, 229–30, 763 A.2d 83 (2000). According to Practice Book § 33-3 (b), now § 35a-7 (b), "[i]n the discretion of the judicial authority, evidence on adjudication and disposition may be heard in a non-bifurcated hearing, provided disposition may not be considered until the adjudicatory phase has concluded."

In the case before us, the court determined that there was a statutory basis for terminating the respondent's parental rights pursuant to § 17a-112 (c) (3) (B), now (j) (3) (B), because the respondent had failed to achieve rehabilitation to such a degree as to be able to assume a responsible position in each of her children's lives. "Personal rehabilitation refers to the reasonable foreseeability of the restoration of a parent to his or her former constructive and useful role as a parent, not merely the ability to manage his or her own life." (Internal quotation marks omitted.) *In re Stanley D.*, supra, 61 Conn. App. 230.

According to Practice Book § 33-3 (a), now § 35a-7 (a), "in the adjudicatory phase [of termination proceedings], the judicial authority is limited to events preceding the filing of the petition or the latest amendment."[8] This court has expanded that rule to *allow* courts to consider events subsequent to the filing date of the petitions in the adjudicatory phase of termination proceedings. "Practice Book § 33-3 (a) [now § 35a-7] limits

---

[8] We note that Practice Book § 33-3 was repealed effective January 1, 2003. Practice Book § 35a-7 (a) provides: "In the adjudicatory phase, the judicial authority is limited to evidence of events preceding the filing of the petition or the latest amendment, *except where the judicial authority must consider subsequent events as part of its determination as to the existence of a ground for termination of parental rights.*" (Emphasis added.) That revision has no bearing on the appeal before us. We further note that under the facts before us, this case would not fall under the exception where a court *must* consider subsequent events. The events occurring after the filing of the petitions were introduced as evidence by the respondent and concerned her rehabilitative efforts. Those events were considered by the court during the dispositional phase of the termination hearing.

the time period reviewable by the court in the adjudicatory phase to the events preceding the filing of the petition or the latest amendment. . . . In the adjudicatory phase, the court *may* rely on events occurring after the date of the filing of the petition to terminate parental rights when considering the issue of whether the degree of rehabilitation is sufficient to foresee that the parent may resume a useful role in the child's life within a reasonable time." (Citations omitted; emphasis added; internal quotation marks omitted.) *In re Stanley D.*, supra, 61 Conn. App. 230; see *In re Amber B.*, 56 Conn. App. 776, 785, 746 A.2d 222 (2000).

The respondent's appeal challenges the evidence that a court *must* consider during the adjudicatory phase of the proceedings. The respondent argues that because this court has stated that trial courts may, in their discretion, consider such evidence, fundamental fairness requires the trial court to consider those events that take place up until the hearing. We do not agree with the respondent.

"[Our Supreme Court has] consistently held that 'may' is directory rather than mandatory. . . . The word 'may,' unless the context in which it is employed requires otherwise, ordinarily does not connote a command. Rather, the word generally imports permissive conduct and the conferral of discretion." (Internal quotation marks omitted.) *Shiffrin* v. *I.V. Services of America, Inc.*, 53 Conn. App. 129, 136, 729 A.2d 784 (1999); see also *Commission on Human Rights & Opportunities* v. *Truelove & Maclean, Inc.*, 238 Conn. 337, 349, 680 A.2d 1261 (1996). We conclude that the court had discretion concerning whether to consider events and behavior that occurred after the filing of the petition to determine if the respondent had failed to achieve sufficient personal rehabilitation to allow her to assume a responsible position in her children's lives.

A claim similar to the one before us was raised recently in which a respondent argued that the court did not consider events subsequent to the filing of the petition and improperly denied the respondent's motion to amend the termination petitions. See *In re Latifa K.*, 67 Conn. App. 742, 749–50, 789 A.2d 1024 (2002). In that case, this court cited events described in the trial court's memorandum of decision that demonstrated that the trial court, in fact, had considered events that occurred subsequent to the filing date. Id., 750.

The record in this appeal shows that the respondent was permitted, without objection, to present evidence that she had achieved rehabilitation after the petitions for termination were filed. The court heard that evidence and, in its memorandum of decision, referred to those events. The court's memorandum of decision is divided into two sections, one dealing with adjudication, the other with disposition. In the adjudicatory section, the court stated that "the [respondent] was, at best, erratic in both securing housing and employment and did not consider the impact of her choices in these areas or [their] effects on either of her children. [The respondent] showed poor judgment, impulsivity and oppositional behavior. All of these characteristics were demonstrated *throughout the pending matter regarding* [her children]. In fact, *despite her knowledge of the pending proceedings*, she continued to abuse illicit narcotics and accumulate new criminal arrests and convictions. [The respondent] continued to demonstrate poor judgment in failing to attend visitations with her children, failing to attend counseling sessions, getting fired from her employment and maintaining a relationship that resulted in domestic violence and the presence of illegal drugs in the home." (Emphasis added.) In addition to concluding that the court was not under an obligation to consider events after the filing of the termination petitions in the adjudicatory phase of the

proceedings, we conclude that the court did, in fact, consider events subsequent to the filing of the petition and that the respondent's rights were not abridged. See id.

In the alternative, the respondent argues that the court deprived her of her due process rights by not having an evidentiary hearing that focused solely on her current status and ability to achieve rehabilitation. Although it appears that her claim was not preserved at trial, we can address the respondent's argument easily, as it previously was addressed by this court. See *In re Deana E.*, 61 Conn. App. 197, 204–207, 763 A.2d 45 (2000), cert. denied, 255 Conn. 941, 768 A.2d 949 (2001).

The respondent argues that a separate hearing is essential to due process and fair treatment under the standards set forth by the United States Supreme Court in *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). Accord *In re Jonathan M.*, 255 Conn. 208, 226 n.20, 764 A.2d 739 (2001); *Scinto* v. *Stamm*, 224 Conn. 524, 535, 620 A.2d 99, cert. denied, 510 U.S. 861, 114 S. Ct. 176, 126 L. Ed. 2d 136 (1993).[9]

This court has stated that "[a] petition to terminate parental rights consists of two phases . . . . It is not

[9] "We have acknowledged that [t]he United States Supreme Court [has] set forth three factors to consider when analyzing whether an individual is constitutionally entitled to a particular judicial or administrative procedure: First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (Internal quotation marks omitted.) *In re Jonathan M.*, supra, 255 Conn. 226 n.20. We note that the risk of erroneous deprivation would be minimal due to the presentation of events and behavior after the petition filing date for consideration during the dispositional phase of the hearing. The respondent would be allowed to present such evidence, and *any* recent rehabilitative efforts would be considered when the court determines if termination is in the best interests of the children.

necessary, however, that the two phases be the subject of separate hearings. One unified trial . . . is permissible." (Citations omitted.) *In re Eden F.*, 48 Conn. App. 290, 305–306, 710 A.2d 771 (1998), rev'd on other grounds, 250 Conn. 674, 741 A.2d 873 (1999). In *In re Deana E.*, this court concluded that the trial court did not abuse its discretion when it declined to apply the *Mathews* balancing test in denying the respondent's motion to bifurcate the termination of parental rights hearing. *In re Deana E.*, supra, 61 Conn. App. 204–207.[10] "The statute [§ 17a-112 (c) (3) (B), now (j) (3) (B)] protects the due process rights of the respondent by requiring clear and convincing evidence in the adjudicatory phase. Using the balancing test of *Mathews*, therefore, is unnecessary and superfluous. In addition, Practice Book § 33-3 [now § 35a-7] specifically allows the court, at its discretion, to combine both phases into one hearing. We find that it was reasonable for the court to conclude that another court would not consider evidence inappropriately." *In re Deana E.*, supra, 207. We conclude that the respondent's rights were adequately protected under the statute and that a separate hearing was not required.

## II

The respondent's second claim is that the court improperly found that the petitioner had proved by clear and convincing evidence that the respondent failed to achieve a sufficient degree of personal rehabilitation within the meaning of § 17a-112 (c) (3) (B), now (j) (3) (B).

"On appeal, we review a trial court's finding that a parent has failed to rehabilitate herself in accordance with the rules that apply generally to a trier's finding

---

[10] We note that there is no evidence that the respondent in this case raised this issue previously either orally or in a written motion during the termination hearing.

of fact. We will overturn such a finding of fact only if it is clearly erroneous in light of the evidence in the whole record. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [O]n review by this court every reasonable presumption is made in favor of the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *In re Vincent D.*, 65 Conn. App. 658, 669, 783 A.2d 534 (2001).

The respondent correctly asserts that rehabilitation does not require that a parent be able to assume the full responsibility for a child without the use of available support programs such as those provided by the petitioner. See *In re Luis C.*, 210 Conn. 157, 167, 554 A.2d 722 (1989); see also *In re Migdalia M.*, 6 Conn. App. 194, 203, 504 A.2d 533, cert. denied, 199 Conn. 809, 508 A.2d 770 (1986). The respondent argues that the court ignored the significant strides that she has made in her drug rehabilitation efforts in the year prior to the termination proceedings and the positive interactions she had with her children during supervised visits. The court, however, makes an inquiry into the *full* history of the respondent's parenting abilities. *In re Galen F.*, 54 Conn. App. 590, 594, 737 A.2d 499 (1999).

"[T]he adjudicatory determination to be made by the trial court is whether the parent of a child who has been found by the [S]uperior [C]ourt to have been neglected and uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child. . . . 'Personal rehabilitation' as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent. . . . In conducting this inquiry, the trial court must analyze the respondent's rehabilitative status as it

relates to the needs of the particular child . . . . The trial court must also determine whether the prospects for rehabilitation can be realized 'within a reasonable time' given the age and needs of the child." (Citations omitted; internal quotation marks omitted.) *In re Tabitha P.*, supra, 39 Conn. App. 360–61.

Although the standard is not full rehabilitation, the parent must show more than "any" rehabilitation. See *In re Stanley D.*, supra, 61 Conn. App. 233; *In re Migdalia M.*, supra, 6 Conn. App. 203. Successful completion of the petitioner's expressly articulated expectations is not sufficient to defeat the petitioner's claim that the parent has not achieved sufficient rehabilitation. *In re Vincent D.*, supra, 65 Conn. App. 670.

Although the respondent has made successful strides in her ability to manage her life, the court had reasonable concerns that such rehabilitation was not enough to assume a responsible position in her children's lives, especially given the special needs of her children. The court's finding that the respondent had failed to achieve rehabilitation to that degree was not clearly erroneous.

The judgments are affirmed.

In this opinion the other judges concurred.