IN RE KAMORA W.*
(AC 33108)

DiPentima, C. J., and Lavine and Espinosa, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued September 6—officially released November 15, 2011

*Michael D. Perez*, for the appellant (respondent father).

*Stephen G. Vitelli*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Opinion*

ESPINOSA, J. The respondent father appeals from the judgment of the trial court terminating his parental

rights with respect to his minor child, Kamora, for failure to achieve a sufficient degree of personal rehabilitation under General Statutes § 17a-112 (j) (3) (B) (ii).[1] The respondent claims that the court improperly terminated his parental rights on the basis of evidence that was insufficient as a matter of law to establish a failure to rehabilitate. We affirm the judgment of the trial court.

The following facts found by the court during the termination of parental rights trial are relevant to this appeal. Kamora was born prematurely at twenty-five weeks and five days gestation. After birth, Kamora spent five months in the hospital's neonatal intensive care unit. Physicians classified Kamora as "medically complex," as she was born with a number of medical complications that left her susceptible to illness and in need of a nebulizer.

Kamora's mother tested positive for cocaine at the time of delivery. The petitioner, the commissioner of children and families, filed an order for temporary custody and an accompanying neglect petition on May 2, 2008, which the court granted and later sustained. On July 29, 2008, the court committed Kamora to the petitioner's care. Upon her discharge from the hospital, the petitioner placed Kamora in a foster home for medically complex children, where she remained until the petitioner moved her to a two parent legal risk foster home. Kamora, now three years old, has never lived with the respondent.

In its order committing Kamora to the care of the petitioner, the court provided for supervised visitation twice a week between the respondent and Kamora. The court also delineated a number of specific steps for

---

[1] Kamora's mother, whose parental rights were also terminated by the trial court, is not a party to this appeal. We therefore refer to the respondent father as the respondent. The guardian ad litem for Kamora filed a statement of position adopting the brief of the respondent.

the respondent to follow in order to regain custody of Kamora. The specific steps included, among other things, directions to refrain from engaging in further substance abuse, to attend parenting training provided by the department of children and families (department), to cooperate with the department to avoid further domestic violence and to notify the department immediately of any changes in the composition of the respondent's household in order to ensure the health and safety of Kamora. On March 17, 2009, the court approved a permanency plan of reunification with the respondent.

Initially, the petitioner acknowledged that the respondent made progress toward reunification—the social workers present at the visits noted that the respondent was interacting well with Kamora and that he seemed genuinely interested in learning how to take care of her special needs. As time went on, however, the respondent interacted with Kamora less during visits, and Kamora no longer displayed excitement upon seeing the respondent. The respondent also began to miss visitation appointments regularly—since October 30, 2009, the respondent cancelled 29 of 117 possible visits with his daughter, approximately 25 percent. The petitioner noted in January, 2011, that Kamora seemed to have grown distant from the respondent, responding unhappily when she was taken to visitation appointments and appearing disinterested during visits. By contrast, Kamora has bonded with her foster family and refers to her foster parents as "momm[y] and dadd[y]."

The respondent has had an ongoing relationship with Kamora's mother for the past eleven to thirteen years, although they were never married and he claims that the two are no longer involved romantically. The mother has struggled with mental health issues and substance abuse for most of her adult life and has a long history

of arrests. The respondent alleges that it was her continuing abuse of substances and instances of her physical abuse of him that led him to end their romantic relationship.

The court found, however, that Kamora's mother was still spending time at the respondent's apartment and that they appeared still to have a relationship. In March, 2009, a social worker with the department, who was returning from picking up another child for a supervised visit, happened to observe Kamora's mother entering the respondent's apartment using a key. On September 30, 2010, upon the release of Kamora's mother from prison, the respondent allowed Kamora's mother to give her parole officer the respondent's address as her place of residence. The respondent did not notify the petitioner of this fact; rather, the petitioner learned of this through the parole officer. The respondent is aware of the unstable nature of Kamora's mother—as recently as October 12, 2010, the respondent has admitted that she should still be in rehabilitation and that he has urged her to participate in another rehabilitation program.

The respondent also demonstrated signs of drug and alcohol abuse. A sample of the respondent's hair tested positive for the presence of cocaine in February, 2009. The respondent claimed that he had not used illegal drugs for two years, but another hair test in February, 2010, also tested positive for cocaine. The petitioner alleged that, on April 11, 2009, the respondent arrived at a drug rehabilitation clinic for an evaluation for a treatment program while under the influence of alcohol. The petitioner also alleged that the respondent smelled of alcohol when he attended a case review at the petitioner's office on October 30, 2009, and when a social worker with the department conducted an unannounced home visit on January 20, 2010. The respondent admitted on September 17, 2009, that he had faced "setbacks." Although he submitted a clean hair sample

in September, 2010, he has not participated in any drug treatment programs since completing an early intervention program in December, 2009. The respondent has refused any further substance abuse treatment, denying that his alcohol use negatively impacts his ability to raise Kamora.

In its decision, the court expressed concern about the availability of a reliable family support system. As the court found, at different times during the rehabilitative process, the respondent offered the names of several family members who would be willing to help him raise Kamora. The court noted, however, that none of those individuals had come forward as willing to provide parental type care for Kamora when the respondent was not able to do so. Likewise, although the respondent suggested on different occasions that he might be able to obtain day care services for Kamora, the court found that, in the roughly three years since Kamora's birth, nothing certain had been put forward in this regard.

On January 27, 2010, the petitioner filed its petition seeking termination of parental rights. Following a trial to the court, which commenced on January 10, 2011, the court determined that the respondent had failed to achieve a sufficient degree of personal rehabilitation and ordered the parental rights of both the respondent and Kamora's mother terminated. The court based its determination that the respondent failed to rehabilitate on its findings that the respondent (1) displayed reluctance toward ending his relationship with Kamora's mother, (2) appeared disinterested in dealing meaningfully with his substance abuse problems and (3) lacked a reliable family support system to help him raise Kamora. The respondent filed this appeal on March 4, 2011. Additional facts will be set forth as necessary.

The respondent claims that the judgment of the court was improper because the evidence was insufficient as

a matter of law to terminate parental rights on the basis of failure to achieve a sufficient degree of personal rehabilitation. Responding to the three concerns of the court, the respondent asserts that there was not clear and convincing evidence that he (1) had an ongoing relationship with Kamora's mother, (2) suffered from a substance abuse problem or (3) lacked a reliable family support system to provide day care assistance for Kamora when he could not do so.[2] We disagree.

"The standard of review on appeal [from a termination of parental rights] is whether the challenged findings are clearly erroneous. . . . The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous." (Internal quotation marks omitted.) *In re Jennifer W.*, 75 Conn. App. 485, 492–93, 816 A.2d 697, cert. denied, 263 Conn. 917, 821 A.2d 770 (2003). "The probative force of conflicting evidence is for the trier to determine. . . .

---

[2] The respondent also makes a more general attack on the judgment of the court, claiming that the court's on the record comments show that the evidence presented was insufficient as a matter of law to terminate parental rights. Specifically, the respondent points to the fact that following closing arguments, the court noted that "I think that [the department] has merely scratched the surface on [the respondent] and his rehabilitation or his ability to be rehabilitated. . . . If you are to make your case, you've got to tell me more than you've told me." The respondent argues that this statement shows that the court did not have enough evidence to terminate his parental rights. This argument is without merit. The court made these comments before carefully evaluating all of the evidence in context. After making these remarks, the court ordered supplemental briefs from both parties to explain more fully why the respondent was or was not prepared to take care of Kamora on his own. This shows only that, before making its ruling, the court pressed the parties to provide the court with enough information on which to base its decision. This does not warrant a conclusion that the court's finding of failure to achieve a sufficient degree of personal rehabilitation was not supported by clear and convincing evidence. Any such determination in this case will have to be based on the court's memorandum of decision, not on these instructions to the parties.

We defer to the trier of fact's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. The trier is the judge of the credibility of all the witnesses and the weight to be given their testimony, and may accept part, all or none of the testimony." (Citation omitted.) *In re Ashley E.*, 62 Conn. App. 307, 316, 771 A.2d 160, cert. denied, 256 Conn. 910, 772 A.2d 601 (2001). "A finding is clearly erroneous when either there is no evidence in the record to support it, or the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . [G]reat weight is given to the judgment of the trial court because of [the court's] opportunity to observe the parties and the evidence. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [Rather] every reasonable presumption is made in favor of the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *In re Samantha C.*, 268 Conn. 614, 627–28, 847 A.2d 883 (2004).

Section 17a-112 (j) provides in relevant part that a court may terminate parental rights if it finds by clear and convincing evidence that (1) the department has made reasonable reunification efforts, (2) termination is in the best interests of the child and (3) the child "is found to be neglected or uncared for and has been in the custody of the commissioner for at least fifteen months and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

The question of rehabilitation turns on whether the parent is able to meet the needs of the child, not whether the parent is able to manage his or her own life. "[P]ersonal rehabilitation as used in [§ 17a-112] refers to the restoration of a parent to his or her former constructive and useful role as a parent. . . . [Section 17a-112] requires the trial court to analyze the [parent's] rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time." (Internal quotation marks omitted.) *In re Chevol G.*, 125 Conn. App. 618, 622, 9 A.3d 413 (2010). In other words, a parent who has taken successful steps to improve his or her own life may nonetheless be found to have failed to rehabilitate if a court finds by clear and convincing evidence that the parent has not reached a level of rehabilitation that encourages the belief that the parent will be able to be a responsible presence for the child in a reasonable amount of time. See, e.g., *In re Eden F.*, 250 Conn. 674, 699–708, 741 A.2d 873 (1999); *In re Alejandro L.*, 91 Conn. App. 248, 260–61, 881 A.2d 450 (2005); *In re Sheila J.*, 62 Conn. App. 470, 479–82, 771 A.2d 244 (2001).

I

The respondent first claims that there was not clear and convincing evidence to support the court's finding that he had an ongoing relationship with Kamora's mother. Emphasizing that there was no instance of domestic violence during the pendency of this case, the respondent maintains that the petitioner never told him that he could not have contact with Kamora's mother. Therefore, according to the respondent, he did not have fair warning that continued association with Kamora's mother would jeopardize his chances at reunification with Kamora. We are not persuaded.

The following additional facts are relevant to this claim. The petitioner presented evidence that on October 9, 2008, Kamora's mother went to the respondent's

apartment for the stated purpose of collecting some of her belongings. Kamora's mother then asked for transportation to a program, but the respondent refused, citing his need to get to work. Kamora's mother became confrontational and aggressive at this response, but the situation did not lead to physical violence. When the respondent reported the incident to the department later that day, the department advised the respondent to obtain a restraining order against Kamora's mother. The department also discussed the impact that a relationship marked by domestic violence could have on the respondent's chances of reunification with Kamora. The respondent later attempted to obtain a restraining order, but the marshal could not locate Kamora's mother to serve her.

The respondent had fair notice that continued association with Kamora's mother could have an impact on his chances of reunification with Kamora. As noted previously, as recently as October, 2010, the respondent urged Kamora's mother to participate in a rehabilitation program. He was aware of her unstable nature, as evidenced by his attempt to obtain a restraining order against her. Furthermore, the respondent had been ordered in the specific steps approved by the court to coordinate with the department to avoid further incidents of domestic violence. The department told the respondent that a relationship marked by domestic violence could have an impact on his chances of reunification with Kamora. With this warning and the specific steps approved by the court, the respondent was put on notice that continued association with Kamora's mother could jeopardize reunification.

There was evidence before the court that the respondent had an ongoing relationship with Kamora's mother. A social worker with the department saw her entering the respondent's apartment with a key in March, 2009.

Furthermore, after her release from prison in September, 2010, the respondent allowed her to use his address for parole purposes. Even though the specific steps ordered the respondent to notify the petitioner of any changes in household composition in order to ensure Kamora's safety, the respondent did not notify the petitioner of this fact. According to the department, the two admitted that they were living together at this time.

Given this evidence, the court reasonably decided that "[i]t does not appear from the evidence that [the respondent] is exercising any control over ending this relationship." The court properly took this into consideration in determining whether the respondent had failed to achieve a sufficient degree of personal rehabilitation. See *In re Alejandro L.*, supra, 91 Conn. App. 261 ("[t]he respondent also maintained a relationship with L despite the fact that her drug counselors advised her to sever her relationship with him"). We conclude that there was sufficient evidence to support the court's finding that the two had a continuing relationship and, given the history of domestic violence between the two, that this relationship interfered with the respondent's ability to be a constructive and effective parent.

## II

The respondent next claims that there was not clear and convincing evidence to support the court's finding that he suffered from a substance abuse problem. He stresses that he completed a drug rehabilitation program in December, 2009, and that a hair test from September, 2010, showed no sign of cocaine use in the prior ninety days. At oral argument before this court, counsel for the respondent asserted that although the respondent tested positive for cocaine on two separate occasions, there was not enough evidence to establish that his substance abuse was any detriment to his ability to raise Kamora. This argument is without merit.

The record reveals that the respondent has used cocaine in the recent past and that he has struggled with alcohol abuse. The respondent's recent use of cocaine in particular is an obvious problem, despite his counsel's assertions to the contrary. The court reasonably could have inferred that the respondent's use of illegal drugs had a negative impact on his ability to raise a child with special medical needs. Although it is true that the respondent had a recent hair test that was negative for cocaine, he has also refused any further treatment. Furthermore, he has refused to acknowledge that he suffers from a drug or alcohol problem at all. The court understandably was disturbed by the respondent's "failure to recognize the detrimental effect his substance abuse will have on Kamora . . . ." We conclude that there was sufficient evidence for the court to find that the respondent had an inadequately addressed substance abuse problem that would interfere with his ability to raise Kamora.

### III

Finally, the respondent claims that there was not clear and convincing evidence to support the court's finding that he lacked a reliable family support system to provide child care assistance for Kamora when he could not provide such assistance. The respondent asserts that he has put forward names of several family members who could assist him with raising Kamora. For this reason, the respondent maintains that the court's finding that he lacked a child care support system for Kamora was not substantiated by evidence. We are not persuaded.

On appeal, the respondent offered the names of several relatives who might be able to assist him in taking care of Kamora. The court, however, found that the respondent had not offered any individuals who could be relied on to provide parental type care for Kamora.

Additionally, a maternal aunt, who originally had been allowed to intervene, stated to the petitioner that "no family members are stable enough to care for Kamora."[3]

Kamora, although not as fragile as she was in the first few months of her life, is still a child who requires close monitoring. Although it is laudable that the respondent works fifty hours a week on average, self-rehabilitation is not controlling. The importance of having a stable support system for Kamora cannot be over-stated. There is a significant difference between having a few individuals interested in helping take care of a child and having family members who can be relied on to watch Kamora, possibly all day. This was a fact that the court recognized: "[T]here is a lack of a support system to care for this child when [the respondent] is unable to do so. Several names of family members, friends and others have been mentioned at different times, but none of these people have come forward and can be reasonably relied upon to provide parental type care for Kamora . . . when [the respondent] is unavailable." Additionally, Kamora is doing well in foster care and has bonded with her foster family.

---

[3] The respondent asserts that the court took this statement out of context, and that in context it clearly refers to Kamora's maternal relatives only. The relevant portion of the trial exhibit in which this remark is recorded states: "[O]n 01/28/10, [the maternal aunt] came in to the [department] office and informed the worker that she made a decision not to pursue this placement, citing the fact that she has been put through a lot of pressure and harassment by her family, who she reported [was] unstable. [The maternal aunt] also stated that in the months that she has been in the [city] area with family members she has learned a great deal about both parents. It is her hope that the [d]epartment will find a pre-adoptive home for Kamora outside the family, stating there are no family members stable enough to care for Kamora." Read in context, the allegations of pressure and harassment clearly only relate to the maternal relatives. The remainder of the excerpt, however, deals with a separate issue of being in the area "with family members." Although there is some ambiguity, it was not clearly erroneous for the court to interpret this latter part of the excerpt as referring to the family generally, as opposed to only the maternal family.

The respondent, in lieu of identifying a family member who could provide the level of attention that Kamora will require, noted at trial that he would qualify for "Care 4 Kids," a child care financial support program that could be used to place Kamora in day care. The court also directly addressed this point in its memorandum of decision: "[W]hile day care was mentioned on a number of occasions, nothing certain has been put forward. If anything were possible over the last three years it should be, at the very least, in the planning stages. It is not anticipated that this service could be put in place within a reasonable period of time." We conclude that there was sufficient evidence to support the court's finding, and we will not disturb it on appeal.

We conclude that none of the respondent's claims concerning the court's findings at trial are persuasive. The court's finding, by clear and convincing evidence, that the respondent failed to achieve a sufficient degree of personal rehabilitation under § 17a-112 (j) (3) (B) (ii) is supported by the evidence in the record.

The judgment is affirmed.

In this opinion the other judges concurred.