******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

TERRAINE MCCANTS *v.* STATE FARM FIRE AND
CASUALTY COMPANY
(AC 36623)

Gruendel, Beach and Bear, Js.

*Argued January 7—officially released June 2, 2015*

(Appeal from Superior Court, judicial district of
Hartford, Vacchelli, J.)

*Tracy L. Montalbano*, with whom was *Daniel P. Sca-
pellati*, for the appellant (defendant).

*Brian M. Silver*, with whom was *John H. Hagel, Jr.*,
for the appellee (plaintiff).

*Opinion*

BEACH, J. A fire damaged premises owned by the plaintiff, Terraine McCants, and insured by the defendant, State Farm Fire & Casualty Company. The plaintiff did not live at the premises full-time, and her interview with the defendant's claims adjuster, together with other information, led the insurer to decline payment. The principal issues in this appeal concern the trial court's conclusions regarding residency requirements and the materiality of a misrepresentation made in the interview.

The defendant appeals from the judgment of the trial court rendered in favor of the plaintiff on her claim that the defendant breached the parties' contract of insurance. The defendant claims that the court erred in rejecting its special defenses regarding residency and misrepresentation. It argues that the court erred in (1) finding that the plaintiff resided at the insured premises at the time of the fire and (2) concluding that the plaintiff made a misrepresentation to the defendant during its investigation of her claim, but that the misrepresentation was not material. We affirm the judgment of the trial court.

The following facts, as found by the trial court, and procedural history are relevant to this appeal. At all relevant times, the plaintiff was the sole owner of 197 Bond Street, Hartford (Bond Street), a three-family home. The defendant issued a homeowner's insurance policy (policy) to the plaintiff; the policy was effective from November 29, 2008 to November 29, 2009. The plaintiff paid all premiums. On April 19, 2009, while the policy was in effect, a fire occurred at Bond Street. The damage from the fire was extensive and rendered the home uninhabitable.

On the day of the fire, the plaintiff was approached by an independent insurance adjuster who offered to assist her in documenting the damage and filing a claim. The plaintiff signed a contract with the independent adjuster. The defendant assigned its investigation to Robert G. Stoddard, Jr. Stoddard interviewed a number of people, including Mary Perry, the plaintiff's mother, who lived on the first floor of Bond Street at the time of the fire; Kyanna Brown, the plaintiff's niece, who lived on the second floor of Bond Street at the time of the fire; and Kingzetta Rose, the plaintiff's niece, who, at the time of the fire, lived with her immediate family at 107 Folly Brook Boulevard in Wethersfield (Folly Brook).

Stoddard's investigation revealed that the fire had been set and that the plaintiff was not a suspect. The investigation focused on the issue of the plaintiff's residency at the time of the fire. In her interview with Stoddard, the plaintiff stated that she had moved out of Bond Street in October, 2008, and had moved into

Folly Brook, her niece's home. She stated that she had not slept at Bond Street since October, 2008, and did not have any personal property there. Because the policy did not cover losses at premises other than "residence premises" of the insured, the defendant denied the plaintiff's claim.

In her operative complaint, the plaintiff alleged that at the time of the fire on April 19, 2009, her home was insured by the defendant under the policy and the defendant breached that contract by failing to pay insurance proceeds to her following the fire. By way of special defenses, the defendant asserted that the plaintiff's claim was barred because she did not reside at the insured location at the time of the loss and she had acted fraudulently. The defendant relied on several provisions of the policy.

At the trial to the court, the plaintiff testified that she lived at Bond Street at the time of the fire. She testified that in October, 2008, she was unemployed and volunteered to help Rose with child care by staying at Folly Brook three or four nights a week. When not babysitting at Folly Brook, she stayed at Bond Street. In its memorandum of decision, the court found that the defendant had not proved its first special defense contesting the plaintiff's residency because, at time of the fire, she resided at the Bond Street premises. The court also found that the defendant had not proven its special defense of concealment or fraud. The court rendered judgment in favor of the plaintiff as to her breach of contract claim, and awarded the plaintiff $412,389.30 in damages. This appeal followed.

I

The defendant claims that the court erred in finding that the plaintiff resided at Bond Street at the time of the fire. We disagree.

The policy unambiguously provided coverage for Bond Street, but only if it was the plaintiff's residence premises. The section of the policy entitled: "Section I–Coverages" provided in relevant part: "We cover the dwelling used principally as a private residence on the resident premises shown in the Declarations. Dwelling includes: a. structures attached to the dwelling; b. materials and supplies located on or adjacent to the resident premises for use in the construction, alteration or repair of the dwelling or other structures on the resident premises; c. foundation, floor slab and footings supporting the dwelling; and d. wall-to-wall carpeting attached to the dwelling." The declarations page listed the location of the residence premises as the "Same as the Insured's Address," which appeared on the front page of the policy as 197 Bond Street, Hartford. Under the section of the policy entitled "Definitions," "insured location" was defined in relevant part as "the residence premises." "[R]esidence premises," in turn, meant "the one, two,

three or four-family dwelling, other structures and grounds; or . . . that part of any other building; where you reside and which is shown in the Declarations."

The issue to be resolved by the court, then, was whether the plaintiff "resided" at the premises at the time of the fire. "[A]n insurance policy is a contract that is construed to effectuate the intent of the parties as expressed by their words and purposes. . . . [U]nambiguous terms are to be given their plain and ordinary meaning." (Internal quotation marks omitted.) *Travelers Casualty & Surety Co. of America* v. *Netherlands Ins. Co.*, 312 Conn. 714, 740, 95 A.3d 1031 (2014). "[T]emporary absence generally does not affect the insurance contract, for the terms 'occupied as a residence' and 'occupied' do not require uninterrupted, continuous occupation." 6A S. Plitt et al., Couch on Insurance (3d Ed. 2005) § 94:71, p. 94-84. "Generally, establishing whether a person is a 'resident' of a household for insurance purposes requires a showing of something more than temporary or physical presence and requires at least some degree of permanence or continuity and intention to remain." 9A S. Plitt et al., Couch on Insurance (3d Ed. Rev. 2006) § 128:7, p. 128-16. A person may have more than one residence. See *Argent Mortgage Co.* v. *Huertas*, 288 Conn. 568, 578, 953 A.2d 868 (2008). A person's residence, then, is a place where the person intends to remain with some sense of permanency, but continuous presence is not required.

In the present case, the trial court embarked on a detailed factual inquiry. "[A] trial court's resolution of factual disputes that underlie coverage issues is reviewable on appeal subject to the clearly erroneous standard. . . . Such a finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [A] finding is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *National Grange Mutual Ins. Co.* v. *Santaniello*, 290 Conn. 81, 90, 961 A.2d 387 (2009).

"The burden of proving an exclusion to a risk otherwise generally insured against is on the insurer."[1] *Souper Spud, Inc.* v. *Aetna Casualty & Surety Co.*, 5 Conn. App. 579, 585, 501 A.2d 1214 (1985), cert. denied, 198 Conn. 803, 503 A.2d 172 (1986); see also *O'Brien* v. *John Hancock Mutual Life Ins. Co.*, 143 Conn. 25, 29, 119 A.2d 329 (1955) (same); *Wojcik* v. *Metropolitan Life Ins. Co.*, 124 Conn. 532, 534, 1 A.2d 131 (1938) (same). Because the court affirmatively found that Bond Street was the plaintiff's residence premises within the meaning of the policy, the technical alloca-

tion of production and persuasion burdens is not at issue on appeal.

The trial court characterized the plaintiff's testimony regarding residence and made factual findings as follows. "[The plaintiff] testified that she lived, on and off, at Bond Street since she purchased it in 1995 due to various life events. Nevertheless she insists that it was her permanent home, her share of the 'American dream' of home ownership, and she has always returned to it. She carried two mortgages on the house and was responsible for its maintenance, repair and tax obligations, and she rented the units to family members when space was available. Over the years, she arranged for repairs or replacement of the roof, siding, and windows, and she had the house painted and the heating systems converted.

"At one time, she occupied the second floor; at other times, she lived with her mother on the first floor. She testified that she left the home in 2004 and moved to Florida for one year, after being laid off, and later moved to Maryland for one year, but lost a job again. She next planned to move to North Carolina, but never did, and the people who were helping her move took, but did not return, her belongings. So, she returned to Bond Street in December, 2007 or January, 2008. In October, 2008, she again found herself unemployed, so she volunteered to help with the child care for her niece, Kingzetta Rose, who lived in a two bedroom apartment at 107 Folly Brook Boulevard in Wethersfield, Connecticut with her three young daughters. She testified that she stayed with the children overnight while Kingzetta [Rose] worked nights as a registered nurse, three or four nights per week. She testified that she did not pay rent to stay in Wethersfield, did not contribute to the expenses there, and did not keep personal belongings there. The plaintiff did not have a bedroom there, and the only personal belongings she had at the apartment were a change of clothes and a toothbrush. When not watching the children in Wethersfield, she testified that she stayed with her mother on the first floor at 197 Bond Street. There, she had a bedroom with a bed, and she kept her clothes on the bed. She also produced various records from various time periods showing that bills and correspondence were mailed to her at 197 Bond Street. However, she had few personal belongings at Bond Street, other than clothes, and she admitted to using the Folly Brook address on her 2006, 2007 and 2008 tax returns. In her 2008 tax return, she stated that she did not use the Bond Street property for more than the greater of 14 days or 10 percent of the total days rented at fair market value. Also, in three leases for the apartments at 197 Bond Street signed on December 1, 2008, the plaintiff signed as landlord and designated 107 Folly Brook Boulevard, Wethersfield as her address. The court also observed that when she first signed the contract with the independent adjuster, she gave as her

address 107 Folly Brook Boulevard. She then rescinded the contract. She signed a new contract on April 24, 2009, this time giving her address as 197 Bond Street, after discussing the residency issue with the independent adjuster. Various family members of the plaintiff testified at trial to support her on the residency issue, in contradiction to their earlier statements. They testified that the plaintiff only stayed overnight at Folly Brook Boulevard to babysit for her niece's children, and that she resided at 197 Bond Street.

"Thus, the plaintiff's evidence concerning her residency was contradictory, confusing, suspicious and, therefore, ordinarily not credible—until it is put in perspective. The court found the testimony of the witness, Kingzetta Rose, most illuminating, when she testified as follows: 'I don't look at Bond Street as just one of your average typical residential homes. Granted, everybody had their own primary residence, but Bond Street for me was different. Even if you resided on the second floor, somebody—they might go to the third floor and stay over. Or if you're on the first floor, you might go up to the second floor or the third floor. Sometimes, you know, all three floors cook, you can go to either floor, you can have dinner. Like I said, different people used to do hair. You could go to either floor, you can get your hair done. The way we refer as staying over, or, you know, living, we kind of see it as differently, because it was a family home, but it was [the plaintiff's] home, regardless of whether she slept on the roof, in the garage, outside, on the sidewalk, it was still her house regardless of where she resided.'

"In this light, the court finds it credible that the plaintiff shared her life with her family members at different locations at different times, paying no attention to the significance of her address identification or mail delivery, and displaying careless disregard for accuracy in legal matters generally. The court attributes the prior contradictory testimony of the plaintiff and her witnesses to their lack of awareness or appreciation of the legal distinctions in issue and the consequences. In sum, the court is persuaded that the plaintiff always maintained physical, financial and emotional ties to 197 Bond Street, and always returned to it because, relatively speaking, it was always her only permanent home."

The court concluded that the plaintiff resided, within the meaning of the policy, at Bond Street, the insured premises, at the time of the fire. The court determined that the policy required the insured premises to be the "residence premises" of the insured and defined the term "residence premises" as "where you reside." The court concluded that Bond Street was the plaintiff's permanent home, despite the facts that she had lived temporarily at other locations as her personal and financial circumstances required, and, at the time of the fire, she stayed overnight for a portion of the week at

Folly Brook.

The defendant argues on appeal that the court's factual finding that the plaintiff resided at Bond Street at the time of the fire was clearly erroneous. It argues that in so finding, the court disregarded: statements made by the plaintiff shortly after the fire to the adjusters and investigators that she resided at Folly Brook and had moved out of Bond Street in October, 2008, and had not slept at Bond Street since; interviews conducted by Stoddard with Rose, Perry, and other witnesses who revealed that the plaintiff did not reside at Bond Street at the time of the fire; that the plaintiff had rented out all three floors of Bond Street at the time of the fire; and additional evidence such as the plaintiff's 2008 tax returns, filed one month prior to the fire, in which she used the Folly Brook address as her own and averred that she had not used Bond Street for personal purposes for more than fourteen days or 10 percent of the total days rented at fair market value.[2]

The defendant argues that the court's findings that Stoddard "understandably decided to deny the claim due to lack of residency" and that the plaintiff's testimony at trial concerning her residency was "contradictory, confusing, suspicious and, therefore, ordinarily not credible" highlight the erroneous nature of its conclusion that the plaintiff resided at Bond Street at the time of the fire. The defendant also argues that the testimony of Rose, which the court found most persuasive, to the effect that the plaintiff shared her life with her family "at different locations at different times" was irrelevant to the issue of residency under the policy. The apt inquiry, the defendant contends, is not whether the plaintiff intended to return to Bond Street in the future, but whether she actually resided at Bond Street at the time of the fire. The defendant argues that the court erred in attributing the contradictions in the plaintiff's testimony to the plaintiff's lack of awareness of legal consequences.

Although there certainly was evidence to the contrary, we decline to conclude that the court's factual findings regarding the plaintiff's residency were clearly erroneous. Although her statement to Stoddard contradicted her position at trial, the plaintiff attempted to explain those statements. She testified that the interview with Stoddard was "awful," that she felt uncomfortable during the interview, and that Stoddard did not allow her to elaborate on her version of events. The trial testimony of the plaintiff, Rose, and residents of Bond Street tended to show that the plaintiff did reside at Bond Street at the time of the fire. The plaintiff testified that at the time of the fire she resided at Bond Street on the first floor with Perry. She stated that Rose worked three nights a week, and on the nights that Rose worked, she babysat Rose's children. She testified that she did not reside at Folly Brook, that she would

sleep on the sofa when babysitting Rose's children, that she did not pay rent to Rose or otherwise contribute to the expenses at Folly Brook, and that she stored no clothes or other personal items at Folly Brook. Rose, who lived at Folly Brook at the time of the fire, testified that at the time of the fire, the plaintiff was a temporary babysitter who watched her children three nights per week. Rose stated that at the time of the fire, she worked twelve hour shifts three nights per week, and, on the nights that she worked, the plaintiff would stay over and babysit her three young children. Rose explained that on the other nights of the week on which she did not need the plaintiff to watch her children overnight, the plaintiff stayed at Bond Street, which was her primary residence. Perry testified that at the time of the fire, the plaintiff was living with her on the first floor of Bond Street and would sleep at Bond Street on the nights that the plaintiff was not babysitting Rose's children. She further testified that the babysitting arrangement with Rose was temporary because at the time of the fire Rose's children were young enough to require a babysitter, but that situation would change. Perry stated that at the time of the fire, the plaintiff would sleep at Bond Street about four nights per week and that the plaintiff kept clothes at Bond Street and received mail there. Deborah McCants and her daughter, Andrea Greene, who both lived on the third floor of Bond Street at the time of the fire, testified that the plaintiff would sleep at Bond Street on the nights that she was not babysitting Rose's children, that her personal property was on the first floor of Bond Street, and that the plaintiff received mail at Bond Street.

It was within the province of the trial court to resolve the inconsistencies between the statements given by the plaintiff and other witnesses to Stoddard prior to trial and their later testimony at trial. See *State* v. *Stephen J. R.*, 309 Conn. 586, 600, 72 A.3d 379 (2013) (within province of trier of fact to resolve evidentiary inconsistencies, and court could believe all, part or none of testimony of any witness). The court was "free to credit one version of events over the other, even from the same witnesses." *Parker* v. *Slosberg*, 73 Conn. App. 254, 265, 808 A.2d 351 (2002). "Where there is conflicting evidence . . . we do not retry the facts or pass upon the credibility of the witnesses. . . . The probative force of conflicting evidence is for the trier to determine." (Citations omitted; internal quotation marks omitted.) *Aetna Casualty & Surety Co.* v. *Pizza Connection., Inc.*, 55 Conn. App. 488, 498, 740 A.2d 408 (1999). "[I]t is well established that a reviewing court is not in the position to make credibility determinations. . . . This court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude." (Internal quotation

marks omitted.) *Smith* v. *Commissioner of Correction*, 121 Conn. App. 85, 92, 994 A.2d 317, cert. denied, 297 Conn. 921, 996 A.2d 1193 (2010).

The court credited the plaintiff's testimony that she resided at Bond Street at the time of the fire. There was evidence before the court that her arrangement three nights per week to babysit Rose's children was temporary, that she did not reside at Folly Brook, and that she did not keep any personal belongings at Folly Brook or contribute monetarily, through rent or otherwise, to its maintenance. In addition, there was evidence that the plaintiff maintained ties to Bond Street, slept at Bond Street approximately four nights per week and kept personal items there. On the basis of the foregoing evidence, the court found that Bond Street was the plaintiff's only permanent home and that she resided at Bond Street at the time of the fire.

It was not necessarily inconsistent for the court to deem "understandable" the defendant's denial of the plaintiff's claim based on her residency and later to determine that the plaintiff resided at Bond Street at the time of the fire. The defendant had information gathered in its investigation that reasonably indicated that the plaintiff did not reside at Bond Street, while the testimony of the plaintiff and other witnesses at trial suggested that the plaintiff did reside at Bond Street at the time of the fire. At the time of the investigation, the defendant may well have deemed its information conclusive. It simply was within the province of the trial court to note that a conclusion other than its own ultimate conclusion was "understandable," and thus reasonable; the observation does not vitiate the court's ultimate conclusion. We conclude that the court's factual finding that the plaintiff resided at Bond Street at the time of the fire was not clearly erroneous.

II

The defendant next claims that the court erred in rejecting its special defense that the plaintiff had made a material misrepresentation to Stoddard, which voided her coverage under the policy. We disagree.

As required by General Statutes §§ 38a-307[3] and 38a-308, the policy contained the following "Concealment or Fraud" provision: "This policy is void as to you and any other insured, if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss."

In its second special defense, the defendant alleged that the plaintiff's claim was barred by the fraud provision of the policy because the plaintiff "intentionally concealed or misrepresented material facts related to her 'residence premises' at the time of the loss." Following the fire, the defendant had requested copies of lease agreements for the premises. At the time, the defendant

claimed, the plaintiff made a claim for lost rents. The defendant alleged that the plaintiff violated the fraud provision of the policy when she did not provide to the defendant either the original leases or copies of the original leases, but rather provided newly recreated versions of the lease agreements without disclosing that they were recreations.

"An insurer who raises th[e] special defense [of concealment or misrepresentation] must prove only that the insured wilfully concealed or misrepresented a material fact with the intention of deceiving the insurer. . . . Unlike a party asserting a cause of action for common law fraud, an insurer who raises the special defense of concealment or misrepresentation does not have to prove that the insurer actually relied on the concealment or misrepresentation or that the insurer suffered injury." (Citation omitted.) *Rego* v. *Connecticut Ins. Placement Facility*, 219 Conn. 339, 346–47, 593 A.2d 491 (1991). It is the defendant's burden to prove its defense of misrepresentation. See *Aetna Casualty & Surety Co.* v. *Pizza Connection., Inc.*, supra, 55 Conn. App. 495.; see also *Souper Spud, Inc.* v. *Aetna Casualty & Surety Co.*, supra, 5 Conn. App. 585.

In this case, it is not disputed that the plaintiff did not disclose to Stoddard that the lease agreements that she provided to the defendant were recreations of the original leases or that her nondisclosure was a misrepresentation. The issue on appeal therefore concerns the materiality of the plaintiff's misrepresentation. Our standard of review in these circumstances is plenary. See *Fine* v. *Bellefonte Underwriters Ins. Co.*, 725 F.2d 179, 183 (2nd Cir. 1984).

The court concluded that the defendant's special defense had not been proved because it found that the misrepresentation was not material. It found that the record did not establish that the plaintiff had made a claim for lost rents; rather, there was "only proof of a possibility" that she might seek a claim for lost rents. The court noted that the plaintiff testified that she gave the defendant recreations of the leases when the defendant requested copies of the leases because the leases had been destroyed in the fire, but she did not inform the defendant that they were recreations. The court found that the plaintiff's nondisclosure was a misrepresentation of fact, but the misrepresentation was not material because there was no record that the plaintiff ever sought lost rental income.

The defendant argues that the court erred in determining that the misrepresentation was not material. It argues that the misrepresentation was material *at the time* it was made, because evidence submitted at trial showed that the plaintiff was making a claim for loss of rents at the time she made the misrepresentation; her eventual abandonment of the claim was of no consequence. The defendant contends that the trial

court's finding that there was a "possibility" that the plaintiff was going to make a claim for lost rents at the time of the misrepresentation was sufficient to establish materiality.

"[T]he materiality requirement is satisfied if the false statement concerns a subject relevant and germane to the insurer's investigation as it was then proceeding. . . . The object of the provisions in the policies of insurance, requiring the assured to submit himself to an examination under oath, to be reduced to writing, was to enable the company to possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to their rights, to enable them to decide upon their obligations, and to protect them against false claims. It thus appears that materiality . . . is not determined by whether or not the false answers deal with a subject later determined to be unimportant because the fire and loss were caused by factors other than those with which the statements dealt. False sworn answers[4] are material if they might have affected the attitude and action of the insurer. They are equally material if they may be said to have been calculated either to discourage, mislead or deflect the company's investigation in any area that might seem to the company, at that time, a relevant or productive area to investigate." (Citations omitted; emphasis omitted.) *Fine* v. *Bellefonte Underwriters Ins. Co.*, supra, 725 F.2d 183–84.

There was evidence before the court that the plaintiff did not, at any time, make a claim for lost rents. On cross-examination at trial, the defendant's counsel asked the plaintiff: "And at one point in time . . . you had indicated that you were making a claim for lost rents, even though I understand that's not—" to which the plaintiff interjected: "No, I never, never was claiming lost rents." The defendant's counsel then questioned the plaintiff regarding her interview with Stoddard, a transcript of which was admitted as a full exhibit at trial. Stoddard asked her about the possibility of loss of rent, to which the plaintiff's adjuster, who was present during the interview, indicated that a loss of rent claim was being made. At trial, the plaintiff's counsel objected on the ground of relevance. The court questioned the defendant's counsel: "[A]ssuming she did tell someone she was claiming lost rent as part of her claim in this case, and now she's not claiming [it], why is that an issue in our case?" The defendant's counsel responded: "As part of its investigation [the defendant] had asked, as [the plaintiff] . . . testified . . . that she produced copies of the lease agreements. We now have testimony that those lease agreements were created after the fact. This was relevant to [the defendant's] investigation of the claim insofar as these were [the] documents [it] asked for, and also, insofar at least at the point of her recorded statement, there was possibly a loss of rent . . . claim being made." The plaintiff's counsel stated:

"[W]e are not claiming loss [of] rent. Yes, she did lose rent. I mean, the property is uninhabitable even today. So, we could have possibly pursued the claim for lost rent . . . . We haven't done that." The defendant's counsel argued that the key was whether the item was fraudulently concealed or misrepresented, and that "even if eventually it turns out that that's not going to be a component in the case, the fact that it occurred and it was relevant to the investigation makes it material." The court overruled the plaintiff's objection. The defendant's counsel then questioned the plaintiff regarding the lease agreements and the address she used on them. The plaintiff testified on redirect examination that there were no false statements in the leases, in that the leases, although not precisely copies of the originals, did not misrepresent or conceal any fact.

The court did not misapply the law or otherwise err in concluding that the misrepresentation was not material. The court found that the record did not establish that the plaintiff "*ever* made a claim for lost rents." (Emphasis added.) The court further found that after Stoddard asked the plaintiff if she had leases for the Bond Street renters, she was told that the defendant needed to have copies of the leases. In the unusual circumstances of this case, the court's conclusion regarding materiality was not unreasonable.[5] There appears to be no reasonable possibility that the plaintiff's nondisclosure regarding the leases had any effect on the defendant's investigation or thought process regarding the investigation.[6] See *Fine* v. *Bellefonte Underwriters Ins. Co.*, supra, 725 F.2d 183–84 (false sworn answers material if they might affect attitude and action of insurer).

The judgment is affirmed.

In this opinion the other judges concurred.

[1] "[I]t has become the established law of this State that one instituting an action upon an insurance policy is only obliged to allege in his complaint, in general terms, that the various conditions precedent stated in the policy have been fulfilled; that it is then incumbent upon the defendant, by way of special defense, to set up such failures to comply with such conditions as it proposes to claim; that the burden rests upon the plaintiff to prove compliance with the conditions so put in issue, but that, as to other conditions precedent, compliance is presumed, without offer of proof by the plaintiff. . . . In a case of this kind the plaintiff is not required to [negate] every possible defense under the policies. In the absence of special defenses his burden is satisfied when he proves his interest, his loss and compliance with the policy requirements as to proof of loss. . . . Where, however, the defendant raises the issue of violation of some particular condition of the policy by a special defense, the burden of proving this issue is on the plaintiff. . . . On the other hand, the burden of proving an exception to a risk is on the insurer. . . . A condition precedent is one which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed. . . . The object of an exception is to exclude that which would otherwise be included, to take special cases out of a general class. . . . By exception of course is meant an exclusion of one or more of the risks otherwise generally insured against . . . ." (Citations omitted; internal quotation marks omitted.) *Young* v. *American Fidelity Ins. Co.*, 2 Conn. App. 282, 285–86 479 A.2d 244 (1984), overruled in part on other grounds by *Ely* v. *Murphy*, 207 Conn. 88, 540 A.2d 54 (1988).

[2] There was evidence supporting the defendant's factual claims.

[3] General Statutes § 38a-307 prescribes, inter alia, that the following language be included in fire insurance policies: "This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto."

[4] The interview Stoddard conducted with the plaintiff in this case was not under oath.

[5] We, of course, make no determinations regarding credibility.

[6] There was no evidence that the documents submitted by the plaintiff were not in substance the same as the leases that reportedly were burned in the fire. If, when asked to produce the leases, the plaintiff had said that the original leases had been burned, but she could and did provide recreations, there would have been no misrepresentation. We do not see how the "misrepresentation" that did occur could have had any material effect on the investigation.